Judge Ewing
delivered the Opinion of the Court.
Stewart and Powell — having recovered a judgment before a justice, against Carlile and Waring, for fifty dollars and costs, and had the execution returned no property found, filed their bill in the Chancery Court at Louisville, alleging that Chamberlin was indebted to Carlile and Waring, and praying that he might be enjoined from paying the amount to them, and that the same, as a chose in action, might, under the statute, be subjected to the payment of their debt.
Chamberlin appeared and answered the bill, and the case was submitted to the Chancellor, on the following agreed case:—
It was agreed that Carlile and Waring were then insolvent, and had been, at and anterior to the filing of the bill; that Chamberlin was indebted to them thirty five dollars, on the settlement of accounts, and they were indebted to the firm of Rogers and Chamberlin, on a note for sixty three dollars and ninety two cents — both debts being due and payable before the bill was filed.
Chamberlin insists on his right, to retain in his hands, the debt due from him, as security, or as discount, of so much of the debt due from Carlile and Waring to him.
The Chancellor sustained the complainant’s bill, and decreed that Chamberlin should pay them the thirty five dollars; and from that decree, he has appealed to this Court.
It has been frequently settled by this Court, that the insolvency of a defendant is per sc a good ground to authorize the interposition of a chancellor, in behalf of a solvent party, to set-off one debt or demand against another, in cases 'where otherwise the set-off would not be *33 allowed. This principle was distinctly recognized by this Court, in the case of Payne vs. London, 1 Bibb, 519; Littell's Select Cases, 488; 4 Monroe, 1, Dickinson vs. Chism’s Administrators et al.; 5 J. J. Marshall, 659, Dye’s Executors vs. Claunch, and various other cases.
The insolvency the time of the assignment, has been held to entitle the obligor equity to set off, in equity, of a demand due him or, against an innocent assignee, of resulted from the in‘ solvency alone.
An insolvent, oor ditor may he°re'stl'auied,mchanlecting his debt, t^'damageiTdte from him to his abe® tho’ the denected.
Where an insolvent more persons jointly the creditor of equty will not permit the insolvent debtor to collect the debt dne him; hut will, at the instance of his joint creditors, compel a set off of the debt the one owes him, against the debt he owes that one with others — notwithstanding there is no connection, nor mutuality in the demands. And—
Indeed, insolvency, at the time of an assignment, has been held a good ground to set-off an independent debt, not otherwise a subject of set-off, against an assigned " ’ ° ° debt, though m the hands of an innocent assignee.
And in the cases of Tribble vs. Taul, 7 Monroe, 456; and Talbott vs. Warfield, &c., 3 J. J. Marshall, 86, referred to by the Chancellor, the Court, in laying down the general principle, state, “that there is no suggestion of insolvency,” and, of course, must be understood as excepting from the rules laid down by them, in those cases, as governing a Court of Equity in allowing sets-off, the case of insolvency on the part of the defendant. Indeed, the set-off, in such a state of case, is based on the principle of moral justice. It is unconscientious for an insolvent creditor to coerce the payment of his debt, when he is owing to his debtor, an equal or larger amount, which he has no means to coerce by the ordinary process of a common law court. And cases are numerous, in which an insolvent or non-resident debtor has been stayed in the collection-of his debt, until damages, to which a complainant may he entitled, against him, are liquidated, under the order of the chancellor, and then set off against his independent, disconnected debt,
If insolvency, and a consequent inability to coerce a debt or damages due from him, be a ground for equitable interierence, we can perceive no principle of reason, justice, or policy, in precluding joint creditors, from the aid of the chancellor, in offsetting .their joint demand, against the separate demand of an insolvent debtor due from one'of them. It cannot be to .the injury of either of the joint creditors, for they secure a portion of their debt, nor would they join in the application, for the offset, if they were unwilling to apply their joint debt in 3 J *34 that way. And no injustice is done to the insolvent, by requiring him to discount the debt due from him to two creditors, against a debt due from one of them to him, unless it can he regarded, as doing him injustice, to restrain him from taking advantage of his insolvent condition, to evade the payment of his own debt, while he uses the power of a court of law, to coerce from one of his creditors a debt due to him.
He owes a debt to both, and it is moral justice for him to pay it, whether it be joint or several, and unconsci•entious for him to harass one of them, for a debt due to him, when he withholds from them, the very means which would enable his debtor to meet and extinguish his demand against him.
Besides; though there does not appear to be any connection between the demands, or any express or implied understanding, that the one should stand against the other, Chamberlin may have become indebted on the faith of having in his and his partner’s hands, in the debt due from them, an amount sufficient to discharge it.— Whether he did or did not, the means are in their hands, and a chancellor should not permit it to be withdrawn by an insolvent debtor, who is unable or unwilling to refund it.
The cases cited by the learned Chancellor, in the English courts, were cases of insolvency under their statutes of bankruptcy,- which were enacted with a view to the benefit of all the creditors. In furtherance of the policy of those statutes, the Chancellor, looking to the interest of all the creditors, and to the pro rata distribution of all the bankrupt’s means among them, was less inclined to disturb the course of distribution, by interfering in behalf of a single creditor. Hence, in ex parte Towgood, 11 Ves. 517, Lord Elden observed, “if there be debts which could not be set off at law, must all the affairs of the bankruptcy be suspended until all the accounts are cleared, in order to see what rights of set-off there may be in the result?” “The consequence would be that, when there are joint and separate debts, which cannot be set off at law, in every bankruptcy the proceedings' must be suspended, until the accounts are ta *35 ken, and it is seen what the joint estate, and what the separate estate, will pay.”
If it were doubtful whether joint creditors could enforce the setofl'iusueha case, still, when another creditor of the insolvent debtor comes with a bill to attach the debt due him, there can be no doubt of the right of such garnishee to set up the debt due to himself & coobligees jointly, as a rebutting equity, to defeat-the attachment.
The statute sub-payment of debts, upon a return of nulla bona, requires that ail Kn bebroi before the court, decree shall be made as shall be equitable. Itauthorizes no decree. that shall deprive a party of any set off, re-butter, or other equitable right. Any equity that could bo made available against the execution debtor himself, to defeat his' claim upon a garnishee, would he equally available against the bill of the attaching creditor.
Even in the cases cited, there seems to have been a strong tendency in the courts to afford relief, and slight circumstances were seized upon to justify it.
But if it be doubtful, whether the chancellor in this •country ought not to interfere in behalf of joint creditors, as complainants, to offset a joint debt against a separate debt, it would not, from thence follow, that Chamberlin, as defendant, might not successfully rely upon the insolvency of Carlile and Waring, and their indebtedness to him and his co-partner, as an equitable rebutter to the relief sought by the complainants.
He asks not for the aid of the Chancellor, but resists the equity set up by the complainants. Though a court of equity might not interfere in behalf of him and his co-partner, to wrest from Carlile and Waring a legal advantage, which they might be unconscientious enough to enforce, in the coercion of their debt from Chamberlin, would the Court lend them its aid, as complainants, to coerce their debt, when they were insolvent, and owed to Chamberlin and his partner, double the amount? And if it would not, does the statute which authorizes the complainants to go into chancery, to subject a chose in action to the payment of their debt, place them upon more elevated ground? We think it does not.
The statute after conferring upon creditors the right to file a bill in chancery, upon the return of no property found upon their execution, to subject dioses in action to the payment of their debt, provides — “and to that end, may bring other parties before the court, and make such decree as may be equitable:'’
_ This latter clause clearly indicates that it was not the intention of the Legislature to place in the hands of the creditor, the power to do injustice to others, or to ... . , . , , take irom tim'd parties, whom théy were authorized to bring before the court, any equitable defence which they ° J might oppose to the equity set up by the complainants, *36 or to change the attitude of their rights, or wrest from them any equitable rebutter which they might oppose to their creditor, were he seeking the aid of a chancellor. The chancellor “may make such decree as may be equitable.” If it be not equitable or just for Carlile and Waring to collect from Chamberlin a debt due to them, while they owe him and his partner double the amount, which they have not the means to pay, neither would it be just and equitable for the complainants to be permitted to do so.
They claim under Carlile and Waring; are asserting a right to their chose in action-, are asking the aid of a chancellor to compel the payment of it to them, and must, in a case like the present, submit to the equitable terms to which Carlile and Waring would be subjected, were they seeking the aid of the chancellor.
Chamberlin is defendant, not complainant. He asks no interposition of a chancellor in his behalf, but desires only to be let alone with the funds in his hands, which his creditors have not yet been so unjust as to demand from him, while they stand indebted to him and his co-partner in a larger amount.
He is in possession of the plank in the wreck; he occupies the “tabulum in naufragio” and asks merely that the Chancellor shall not assist his adversaries in thrusting him from it.
The decree of the Chancellor is therefore reversed, and cause remanded that the bill may be dismissed as to Chamberlin, with costs. And the plaintiff in error is entitled to his costs in this Court.