ADDISON,
*January,*
1843.

Foot
*v.*
Ketchum &
Shaw,
and
Ketchum
*v.*
Foot.

HARRIETT S. FOOT *v.* JOSEPH C. KETCHUM and
CALVIN A. SHAW.

*And*

ALLEN KETCHUM *v.* HARRIETT S. FOOT.

*(In Chancery.)*

If demands are, in reality, mutual, though not nominally so, and equity requires a set-off to be made, chancery will make it.

The assignee of a chose in action takes it subject to all the equity existing at the time, in the original obligor or debtor.

A negotiable note assigned by parol, after it has ceased to be current, is subject to the same rule.

A promise, without consideration, by the obligor to the assignee, after assignment, to pay the demand, and which had, in no way, been made the basis of action, or an occasion of prejudice to the assignee, cannot, as matter of law, estop or conclude the obligor from setting up an equitable set-off against the assignee, which existed against the assignor, at the time of the assignment.

Before accounts can be set off in chancery, they must be liquidated.

Where the assignee of a note instituted a suit on it in the name of the payees, and the maker filed a declaration on book, in off-set, against one of the payees, to whom the note belonged, and from whom the assignee claimed, and there was a judgment to account, and a trial before the auditors, at which the assignee appeared and defended, it was held that the report of the auditors, which had been returned to, and accepted by, the court, was a sufficient liquidation of the account of the maker of the note, to make it the basis of a set-off in chancery, against the assignee.

THIS was an appeal from a decree of the court of chancery.

The oratrix, Harriett S. Foot, in her bill, set forth and charged, in substance, that previous to the 26th of February, 1836, the said Joseph C. Ketchum and Calvin A. Shaw were copartners in trade under the firm of Ketchum & Shaw, and that mutual accounts current existed between the said Ketchum & Shaw and the oratrix, and that the oratrix had, at the same time, a large account against the said Ketchum; that on the said 26th of February, the oratrix executed her note, payable on demand, to Ketchum & Shaw for $404.94, being the balance of their copartnership account against her, upon their assurance that the balance of her claim against Ketchum should, when ascertained, be applied on said note, and that what should thereafter become due from Ketchum, for rent, or otherwise, should be, also,

applied thereon, and that, in the settlement of the partner-ship concerns—the said partnership having been previously dissolved—the note should become the sole property of Ketchum;—which note, the oratrix alleged, was actually set to Ketchum, in the settlement of the partnership concerns, as his property, and continued in his possession until he absconded from the state.

Addison, January, 1843.

Foot v. Ketchum & Shaw, and Ketchum v. Foot.

And the oratrix further alleged, that after the dissolution of said copartnership, the said Ketchum occupied the store of the oratrix, and that she boarded him, and advanced him money, and delivered him various articles of property, and rendered him services, upon his agreement that her account for the same should be applied on said note, and that, no settlement of said accounts having been made, Ketchum, on the 20th of November, 1837, absconded from the state, insolvent, and had not returned.

And the oratrix further set forth and charged that, subsequently to the said 20th of November, the said Ketchum and his confederates procured a suit to be commenced against her, on said note, in the name of Ketchum & Shaw, which was entered at the June term, 1838, of Addison county court, at which term she filed her declaration on book against Ketchum, in off-set, with averments, showing that said note was, and always had been, the sole property of Ketchum, and was subject to the off-set claimed; that Ketchum appeared by attorney, and a judgment to account was rendered, and auditors were appointed to examine and adjust the accounts, who proceeded—the said Ketchum appearing before them by attorney—to adjust the accounts between him and the oratrix, and at the December term, 1838, of said court, reported a balance due to her from Ketchum of $444.49, and $17.86 costs before the auditors—which report was accepted by the court, and judgment rendered thereon; that, at said last mentioned term, the oratrix filed her plea in off-set to the action on said note, in assumpsit, by reason of the indebtedness of said Ketchum to her, for two promissory notes, one for $50.08, signed by John Perry, the other for $26.11, signed by Abram Dunning, the property of the oratrix, and obtained by Ketchum and appropriated to his own use, and moved the court to set off the sum found due her by said auditors, together with

Foot
*v.*
Ketchum &
Shaw,
and
Ketchum
*v.*
Foot.

the sum due on said two promissory notes, on the judgment against her in favor of Ketchum & Shaw; and that, at the June term, 1839, the court decided against the allowance of said claims in off-set, and rendered judgment against the oratrix for the full amount of said note, to which decision she excepted, and the exception was allowed, and the cause sent to the supreme court for their decision thereon.

The oratrix prayed that the court would decree that the sum found and reported by the auditors, together with the the costs before them, and, also, the amount of said notes of Perry and Dunning, should be set off on the judgment in said suit of Ketchum & Shaw, and that the balance be decreed to her, and the said Ketchum & Shaw be enjoined from proceeding, at law, against her, in the suit aforesaid.

To this bill there was no answer, and it was taken as confessed.

And at the same term of the court of chancery, Allen Ketchum came into court by his solicitor, and filed his cross bill against the said Harriett S. Foot, in which he set forth and charged, among other things, that Joseph C. Ketchum, having procured the orator to become surety to a large amount, for him and for the firm of Ketchum & Shaw, turned out to the orator, on the 20th of November, 1837, as an indemnity for said liabilities, the note in question, which the orator received in good faith as such indemnity, and that an account of Ketchum & Shaw against said Harriett, showing a balance due them, of near $400, was, at the same time, and for the same purpose, transferred to the orator; that within two or three weeks, he notified the said Harriett S. of the transfer to him of said note, who thereupon promised to pay the same; that he subsequently caused a suit to be commenced thereon, in the name of Ketchum & Shaw, upon the entering of which, in court, the said Harriett S. filed her declaration on book against said Ketchum, upon which the proceedings were had, described in the bill of the said Harriett S.; that the account presented by her to the auditors in that case, and allowed by them, contained a large number of items which had not been entered on her book until after the commencement of said suit against her; and that, upon a just settlement of the several matters of book account between the said Harriett S. and Joseph C., there

ADDISON,
January,
1843.

Foot
v.
Ketchum &
Shaw,
and
Ketchum
v.
Foot.

would be a balance due to him exclusive of the note in question.

And the orator further alleged that Joseph C. Ketchum received the said note as part of the assets of the firm of Ketchum & Shaw, for the purpose of extinguishing its liabilities; that there was no agreement that the note should be off-set upon J. C. Ketchum's private account, but that it, in fact, comprehended the balance due on that account; and that the notes of Perry and Dunning, described in the bill of the said Harriett S., came into the hands of the said Joseph C., as her agent for the collection of the same, and that he had received nothing thereon.

The said Allen prayed that the injunction obtained by the said Harriett S. against the prosecution of the suit on said note, might be dissolved, and that he might be permitted to proceed in the collection of the same.

The said Harriet S. made answer to the cross bill, and therein denied its allegations, excepting those which were coincident with the allegations in her bill against Ketchum and Shaw. The answer was traversed and testimony taken. Among the witnesses who testified was E. W. Drury, to whom, with Allen Ketchum, the said Joseph C. at the time of transferring the note in question to the said Allen, made a general assignment of his notes and accounts, first for the security of said Drury, and then as indemnity to said Allen. The facts found, sufficiently appear in the opinion of the court.

The chancellor, upon a hearing, decreed that the cross bill be dismissed with costs for the defendant, and that the amount found due by the auditors, together with a certain sum collected upon the note of Abram Dunning, be set off and applied in satisfaction of the said judgment in favor of Ketchum & Shaw; that the balance should be paid by J. C. Ketchum, to the said Harriett S. Foot, together with her costs in the action on the note, and the proceedings in off-set; and that Ketchum and Shaw, and Allen Ketchum should be enjoined from further prosecuting said judgment.

*C. Linsley,* solicitor for Ketchum & Shaw and Allen Ketchum.

I. The debts are not mutual, and can no more be off-set

Addison,
January,
1843.
———
Foot
v.
Ketchum &
Shaw,
and
Ketchum
v.
Foot.

in chancery than at law. *Palmer* v. *Green*, 6 Conn. 14 ; *Duncan* v. *Lyon*, 3 Johns. Ch. R. 351 ; *Dale* v. *Clark*, 4 Johns. Ch. R. 11 ; *McDaniels* v. *Nelson*, 2 Cow. 173 ; Story Eq. Dig. 663.

II. Unliquidated demands cannot be off-set between the same parties, either in equity or in law. Our statute aids the party in liquidating a book debt, but then it must be a debt against the plaintiff, in the suit. If the party cannot succeed under a statute, a court of chancery cannot come in to enlarge the statute, or help out is supposed intentions. *Gardner* v. *Brown*, 2 Johns. 154 ; Statute, 213 ; *McDaniels* v. *Nelson*, 2 Conn. 173 ; 2 Story's Eq. 665. n.

III. The allegations in oratrix's bill, and the evidence put in by her, is evidence to vary the note, and inadmissible. It alleges that a note given to Ketchum & Shaw, for a debt due them, was, really, to be payable only to Ketchum ; and it sets up that the contract was, not that she should pay this note, agreeably to its tenor, but that it should not be paid, and that her account should be off-set against it.

IV. It was fraudulent to give a note to Ketchum & Shaw for them to use as an operative and effective note, and, at the same time, stipulate that it should be defeated by a private account of the promisor against Ketchum ; and especially the permitting the note to be in Ketchum's hands from year to year, as in the hands of Ketchum & Shaw, was calculated to deceive and defraud innocent persons. Indeed, giving a note and expressly promising to pay a given sum, should be held a waiver of any right to set-off a then existing debt. *Hendricks* v. *Judah*, 1 Johns. 319 ; *Sandford* v. *Mickles & Forman* 4 Johns, 224 ; 2 Chitty Eq. Dig. 1202.

V. The cross bill states, and the answer admits, that Allen Ketchum is a surety for a large amount for Ketchum & Shaw, and, as this note was given to Ketchum & Shaw, for a debt due to them, and on which there was no right of set-off, it was their property, and has gone to one who stands as surety for them, as an indemnity, which is the same as if it had gone directly to a creditor of the firm. Hence the property, if not restrained by this court, will go to pay the debts of the firm, instead of paying the individual debts of Ketchum, which is in accordance with the highest principles of equity.

VI. A person who takes over-due paper, it is said, is sub-

ADDISON,
January,
1843.

Foot
v.
Ketchum &
Shaw,
and
Ketchum
v.
Foot

ject to all the equities existing at the time between the parties; but this is to be understood of the ostensible parties; and no case, it is believed, has extended the doctrine beyond this. But this must be understood of an equity that attaches to the bill itself, and not that a bill over-due, passing into third hands, on being sued, is to operate, on a bill in chancery, for a general settlement between the original parties.

VII. The statute authorizing the liquidation of a book debt, with a view to an offset, if not extended by loose and ill-judged construction, furnishes reasonable security to the party to be affected by it, for he may be a witness and testify against the claim; but here, Shaw could not be a witness, nor Allen Ketchum; and Joseph Ketchum, having failed, was only interested in enabling his mother-in-law, to avoid this debt. Hence, there has been no trial of this, by the persons really in interest. *Holland* v. *Makepeace*, 8 Mass. 418.

VIII. Allen Ketchum, having taken this paper for pre-existing debts and liabilities, is to be regarded as a purchaser for value. *Brush* v. *Scribner*, 11 Conn. 388.

IX. If there was an agreement when the note was given, that it should go into the hands of Ketchum, and that any private account that oratrix might have, should apply on it, still there was no consideration to support such a promise. No right of off-set then existed; and Mrs. Foot neither gave any thing, or surrendered any right she had. The debt is evidenced in a different way, but the same sum is due to Ketchum & Shaw, as before. It would be singular to hold, that the giving of a note for a pre-existing debt was a good consideration for defeating the debt, or make it the basis of a promise inconsistent with the terms of the note.

X. Where paper, over-due, is taken, which was subject to off-set at law, in the hands of the holder, yet, if, on being notified of the transfer, the maker do not claim the off-set, or, at least, if he do any act to mislead the holder or delude him, the off-set cannot prevail, even at law, because of the gross injustice.

When paper, over-due, passes into the hands of a *bona fide* holder, common honesty and fair dealing require of the maker to disclose any defence he may have, the moment he is applied to by the holder. Especially should this be so

Foot
v.
Ketchum &
Shaw,
and
Ketchum
v.
Foot.

with us, where there is no general habit of meeting paper at maturity, as in more commercial communities; and consequently no suspicion attaches to a note because it is due.

It was not until Allen Ketchum had incurred costs, that this defence was disclosed; Mrs. Foot has, therefore, no equitable ground, on which to come into this court to claim its aid. *Mowry* v. *Todd,* 12 Mass. 282; *King* v. *Fowler,* 16 Mass. 397; *Eels* v. *Finch,* 5 Johns. 193; 6 Cow. 693.

XI. The decree is, perhaps, consistent with itself; but upon what equitable ground the oratrix is entitled to costs, it is somewhat difficult to discover. If there is any truth in the evidence she should pay costs. *Bant* v. *Bant,* 8 Pick. 343. The costs, in this case, in the suit at law, have been advanced by the attorney. *Hall* v. *Acley,* 2 Bos. & Pul. 28; *Middletown* v. *Hill,* 1 M. & S. 240.

*H. Seymour* and *P. Starr,* solicitors for Harriett S. Foot. The grounds on which the offset is claimed are—

I. That the note, though nominally payable to Ketchum and Shaw, is, in fact, due to Ketchum alone. At the time the note was given, it was agreed by the parties to the note, that Shaw was to have no interest in it, but that it was to become Ketchum's property, and remain in his possession. This was the condition upon which Mrs. Foot signed the note; and it was so agreed, for the purpose of securing to her the application on the note of what Ketchum owed her, as, also, of the accruing rents and what she should thereafter let him have.

In conformity to this understanding, in the division made of the property between Shaw and Ketchum, this note was set to Ketchum as his individual property. It was never claimed nor controlled by Shaw, but was in the possession of Ketchum up to the time he absconded in November, 1837. In equity, therefore, the note is, in every respect, as to the offset, the same as if it had been made payable to Ketchum alone. *Pond* v. *Smith,* 4 Conn. R. 297; *Ferris* v. *Burton,* 1 Vt. R. 455; 2 Story's Equity, 664.

II. This is a case of mutual credit. Part of Mrs. Foot's account, as allowed by the auditors, $477, was for rents of her store and house that had accrued after the dissolution of the partnership between Ketchum & Shaw. The fact that

ADDISON,
January,
1843.

Foot
*v.*
Ketchum &
Shaw,
and
Ketchum
*v.*
Foot.

Ketchum was in possession, and sole owner, of the note, was the inducement to Mrs. Foot to permit the rents and other claims against him to accumulate to so large an amount. It was on the credit of this note that Ketchum was trusted so largely and for so long a time; and it was with a view to the payment of this note that Mrs. Foot did not require payment of her rents and other claims. No case of offset can have stronger equity than this, and no act be more fraudulent than the attempt by Ketchum to transfer the note. 2 Equity Digest, 93.

III. Joseph C. Ketchum was wholly insolvent, and was in the act of absconding from the state at the time of the pretended transfer of the note. His insolvency is shown by all the testimony in the case, and Mrs. Foot's claims against him, unless offset against the note, must be wholly lost. *Ferris* v. *Burton*, 1 Vt. R. 455; *Lindsey* v. *Jackson*, 2 Paige's Ch. R. 582; *Reed* v. *Bank of A.*, 1 do. 218.

The finding of the auditors, on a full hearing, all the parties interested being present, is satisfactory and conclusive proof of the balance that is justly due. In addition to the report of the auditors, the oratrix has put into this case testimony showing, beyond a doubt, that the services for which Mrs. Foot charged were rendered by her, and that the rents and property Ketchum was charged with, in her account, he had the benefit of, and ought to pay for, and did, at the time, expect to pay for.

The question, then, is, how were Mrs. Foot's rights affected or varied by the assignment to Allen Ketchum, or by what occurred subsequently to that time? It is insisted that the transfer of the note by Joseph C. Ketchum to Allen Ketchum could have no effect upon Mrs. Foot's right of offset, because the demands against Joseph C. Ketchum, which Mrs. Foot claims to have offset, had all accrued previous to the time when it is claimed that the note was transferred to Allen Ketchum. 1 Eq. Dig. 193–4; 5 Paige's Ch. R. 594; 13 Mass. R. 304; 1 Paige's Ch. R. 131; 2 Eq. Dig. 93. Allen Ketchum received the note subject to all Mrs. Foot's equities existing at the time of the transfer. 1. Because the note was then overdue, and had been for nearly two years. 2. Because Allen Ketchum advanced no value for the note. 11 Vt. R. 70; 5 Pick. R. 316; 1 Paige's Ch. R. 131, 320;

ADDISON,
January,
1843.

Foot
v.
Ketchum &
Shaw,
and
Ketchum
v.
Foot.

1 Paige's R. 366 ; 5 Paige's C. R. 594. It may be observed, too, that the note was never endorsed to any one ; and that the general description in the assignment to Allen Ketchum and Drury would include this note, and would seem to transfer the note, as well as the account against Mrs. Foot, to Mr. Drury.

The cross bill charges that Mrs. Foot's account against Ketchum is fraudulent and false. The answer of Mrs. Foot denies this, directly and fully. The finding of the auditors shows that her account was justly due. Besides this, the principal items of the account and almost the whole of it is shown to be just and reasonable by the testimony of several witnesses.

The cross bill further charges, that some two or three weeks after Joseph C. Ketchum had absconded, Mrs. Foot, on being notified of the transfer of the note, promised to pay it. This, too, is denied by the answer. But if, in the conversations testified to by the witnesses, Mrs. Foot did, in fact, say she would pay this note, or expressly promised to pay it, yet it would have no effect in this case, because there was no consideration for such promise. Allen Ketchum assumed no new liability, nor relinquished any former security, by reason of any thing said by Mrs. Foot in these conversations ; nor was there any benefit received by Mrs. Foot, nor any promised, that would make a good consideration for a promise on her part.

It is obvious, from the testimony, that Mrs. Foot, in these conversations, had no intention of giving away her right, or of binding herself by any new agreement ; but that she wished to convince those who took an interest in the matter, that whatever she did owe should be paid.

The opinion of the court was delivered by

BENNETT, J.—This case has come before us by an appeal from a decree of the chancellor of the third judicial circuit, and we are called upon to revise his proceedings. In February, 1836, the oratrix was indebted to Ketchum & Shaw, in about the sum of four hundred dollars, and gave them her note payable to their order on demand. The note has been prosecuted to final judgment, and the object of this bill is to procure a set-off of a claim which the oratrix has

against Joseph C. Ketchum, in payment of the judgment on
the note. The first question which presents itself, is,
whether the oratrix is entitled to the prayer of her bill, as
against Ketchum & Shaw. We think it is well established
by the testimony, that when the note was given, it was un-
derstood by the parties that it should become the private
property of Joseph C. Ketchum. The testimony of Chas.
K. Foot is full that such was the previous understanding
between the oratrix and Mr. Shaw, and that it was expected
that her claims against Joseph C. Ketchum would be ap-
plied on the note. The evidence is very ample that the note
did, in fact, become the private property of Ketchum ; and
no question is made upon the evidence as to his insolvency,
and indeed none can be made ; and the note remained in
the possession of Ketchum, up to the time he absconded in
November, 1837. Though the rule in chancery, as well as
at law, to authorize a set-off requires the debts to be between
the same parties, yet, if the demands are, in reality, mutual,
though not nominally so, and equity requires a set-off to be
made, chancery will make it. It was so done in the case
of *Ferris* v. *Burton,* 1 Vt. 439. This is according to the
usual course of chancery proceeding ; and it is too clear to
admit of debate, that, as between the parties to the original
bill, this is a proper case for a set-off.·

But the important question arises on the cross bill of Allen
Ketchum, who claims to come in as the assignee of Joseph
C. Ketchum. Has he an equal, or a superior equity to the
oratrix, which will enable him to defeat the set-off ? There
seems, from the testimony, to be some uncertainty as to the
manner, the object, and conditions, upon which the note of
Mrs. Foot went into the possession of Allen Ketchum. It
was not included with the other demands in the written
assignment of Joseph C. Ketchum. It is not endorsed ;
neither is its transfer evidenced by any note or memorandum
in writing. If Joseph C. Ketchum, as it is claimed, on the
eve of his leaving the state, passed the note over to Mr.
Drury for the benefit of the orator in the cross bill, yet it
was to indemnify him against liabilities which he had previ-
ously incurred, and not upon any new consideration advanced
at the time. It was long after the note had ceased to be
current, and in violation of all good faith between Joseph C.

ADDISON,
January,
1843.

Foot
*v.*
Ketchum &
Shaw,
and
Ketchum
*v.*
Foot.

Ketchum and his mother-in-law, Mrs. Foot. No legal title to this note passed to Allen Ketchum, but, at most, only an equitable one ; and, standing upon his equity, he cannot be in a better condition than Joseph C. Ketchum himself, and no new equity is created by force of the assignment.

It is a well settled doctrine that the assignee of a chose in action takes it, subject to all the equity existing at the time, in the original obligor or debtor. *Turton* v. *Benson*, 1 Peere Wms. 496 ; *Coles* v. *Jones*, 2 Vernon, 692 ; *Murry* v. *Lylburn*, 2 Johns. Chan. 442 ; *Norton* v. *Rose*, 2 Wash. R. 233, 254. Though the note was negotiable, yet, as it was not negotiated, and passed after it ceased to be current, the law merchant, as applicable to commercial paper, cannot aid the orator in the cross bill. All the claims of Mrs. Foot against Joseph C. Ketchum accrued before he parted with the note. When she consented to give the note, running to Ketchum & Shaw, she was assured the note was to become the private property of Ketchum ; that any claims which she might have against Ketchum might be brought in in payment of it ; and, after the settlement between Ketchum & Shaw, by which this note became the property of the former, and while he was renting the store of Mrs. Foot, and was the owner and holder of this note, there was an express agreement between them, that her claims should be set-off on the note, and that the balance, if any, should be paid out of the sale of her house, which Ketchum, at that time, contemplated buying. But the house was not sold ; and Ketchum rented the same up to the time he left the country. In addition to this, Ketchum is insolvent. Here, then, we think there is an equity in Mrs. Foot to have the set-off made, superior to any which attaches to Allen Ketchum, and of which she ought not to be defeated by force of the assignment.

It has been said, in argument, that while the note was in the hands of Allen Ketchum, Mrs. Foot promised to pay it ; and that she has thus precluded herself from the set-off. But from all the testimony in the case, and the circumstances attending the transaction, the fact of such promise being understandingly made rests in doubt. If such promise was made, it most probably had relation to the payment of such balance as, in the end, might be found due. It is evident

Addison,
January,
1843.

Foot
v.
Ketchum &
Shaw,
and
Ketchum
v.
Foot.

that Mrs. Foot was not in a situation to liquidate her claims against Joseph C. Ketchum, at any of the interviews between her and Mr. Drury; and, it is quite probable, was not advised as to what the precise standing of their relative claims in justice should be. But if there had been an absolute promise to pay the note, still it would not operate as an *estoppel* to this claim for the set-off. It was without consideration, made after Allen Ketchum had taken the note, and while J. C. Ketchum was insolvent, and out of the country, and was, in no way, made a ground of action by Allen Ketchum. If he had been induced to act upon it to his prejudice, it might have merited a different consideration. Such evidence, when investigating the standing and amount of her account, could be urged with propriety upon the consideration of the triers ; and probably it might have been, in this very matter, before the auditors.

Before a set-off can be made, it is necessary that the account should have been liquidated by a master, or by some other means. In the present case, Allen Ketchum, claiming to be the assignee of the note, commenced his action on the note, and, as matter of defence, Mrs. Foot filed her declaration on book against Joseph C. Ketchum, in off-set. The counsel for Allen Ketchum, who appear upon the record for Ketchum & Shaw, appeared, and submitted, in the declaration on book, to a judgment to account, and the matter went to auditors. The counsel for Allen Ketchum appeared before the auditors with the private account of Joseph C. Ketchum ; and there was a full, and, for aught that appears, an impartial trial ; and the allegation that the account allowed by the auditors was unjust and fraudulent is without evidence to support it. All the evidence relative to the accounts now before us was, or might have been, before the auditors. Mr. Drury might as well have been examined as a witness then as now, and, for aught that appears, was examined. The auditors were competent men, whose impartiality and integrity is not to be questioned. The claims of Mrs. Foot were defended against by the same counsel who now appear to contest them, and who then had the same means of knowledge relative to them which they now have.

In regard to the account of Mrs. Foot, which accrued be-

ADDISON,
January,
1843.

Foot
v.
Ketchum &
Shaw,
and
Ketchum
v.
Foot.

fore the settlement of Ketchum & Shaw's account by the giving of the note, and about which much has been said, the auditors find it was not included in that settlement. The settlement was made by Shaw, and it is quite reasonable to suppose that he might not settle the private accounts of his partner. The auditors allowed to Mrs. Foot, for washing, over two years, for lamps, wood, making fires, and for watching and nursing, one hundred fifty-six dollars. Though this might seem to be a large sum, yet, whether reasonable or not, must depend upon the circumstances of the case. The physicians who attended Mr. Ketchum in his sickness, and who testified before the auditors, and whose testimony was taken in the chancery court, did not think it an unreasonable sum. They probably have as good a knowledge about it as any one. The report of the auditors, when returned to the county court, was accepted without objection. The auditors did, no doubt, what they thought right, though their proceedings are now strongly called in question; but if we are not to consider the proceedings upon the declaration on book as conclusive—as *res adjudicata*—but that it is within the power of the court to open the accounts to further litigation before a master, still there would be no good reason to suppose that better justice would be done by the master, in this respect, than has been already done by the auditors. Indeed, considering there has been the lapse of about five years, since the accounts have been adjusted by the auditors, there is the less probability of a just result. On the whole, though it is possible injustice has been done, the court see no good reason for sending these accounts to a master; and we are disposed to adopt the liquidation by the auditors. Nothing should be allowed to Mrs. Foot on the Perry note; but she is entitled to have allowed her the small amount collected of Dunning. The amount, and the time of its receipt, are given in the testimony of Mr. Barber. This, added to the amount reported by the auditors, with the interest, exceeds the amount due on the note in controversy. The set-off was properly made by the chancellor; and as Allen Ketchum has resisted it against equity, he should pay costs upon his cross bill.

The decree of the chancellor should be affirmed, with additional costs, and the cause is remitted to the court of chancery, to be proceeded with accordingly.