Goodwin *v.* Keney.

———————

LEVI GOODWIN *vs.* HENRY KENEY AND ANOTHER.

A conveyance by a tenant in common by metes and bounds of his interest in a part of the land held in common is good, where the other co-tenants assent to it. And this assent need not be by deed, but may be given in other modes.

Where, after a mortgage so given, the other co-tenants and their successors remained silent for over thirty years, during which time the interests of all the original co-tenants passed by deed or devise to others, while all presumably knew of the mortgage, it was held to be doubtful whether any co-tenant could be heard to make the objection.

But clearly a person who had acquired his title from the mortgagor would not be allowed to deny the validity of the mortgage.

A deed of land was left by a grantor at his death undelivered. Held that no effect could be given to it by proof of declarations of the grantor, made while making his will, that he regarded the deed as a testamentary disposition of that part of his property.

A mortgage contained the following clause: " With authority to collect any and all rents that may become due to me from said premises and apply the same towards the interest of said. note." Held—1. That without this provision the mortgagee would have had power to take the rents. 2. That it did not impose upon him the duty of collecting the rents, nor make him chargeable with them unless they were actually received; nor was he responsible for not collecting the interest from a life tenant of the equity.

A petitioner for a foreclosure was insolvent. The respondent, who owned the equity of redemption but was not the original mortgagor, had a claim against him personally. Held that it could be set off against the mortgage debt.

A respondent in a foreclosure suit was a married woman. Held that the objection that her husband should have been joined as a defendant was in the nature of a plea in abatement, and could not be heard after a trial on the merits.

BILL for a foreclosure, brought to the Superior Court in Hartford County and heard before *Culver, J.* The same case was before this court at a former term, when the court reversed a judgment of the Superior Court dismissing the bill. 47 Conn. R., 486. The original respondents were Henry Keney, trustee of a life estate in the equity of redemption for Albert Goodwin, and Elizabeth G. Kingsbury; but by the death of Goodwin during the pendency of the suit the entire interest in the equity had become vested in Mrs. Kingsbury, and she was at the time of the decree the sole respondent. The court passed a decree of foreclosure and the respondent filed a motion in error upon sundry grounds, as did also the petitioner upon the ground that a set-off against the mortgage debt had been allowed in favor of the respondent. The case is sufficiently stated in the opinion.

*C. E. Perkins* and *C. Lounsbury,* for the petitioner.

*E. Goodman* and *F. H. Parker,* for the respondent.

CARPENTER, J. In 1846 John K. Goodman and Abigail Goodman, with their three sisters, were tenants in common of six distinct parcels of land, each owning one fifth, deriving title under the will of their father, Richard Goodman. On the third of November, 1846, John K. mortgaged his interest in two pieces of the common property to Abigail. One of these pieces was subsequently discharged by the mortgagee, and she took possession of the interest purporting to be conveyed in the other, and remained in possession, taking the rents to herself, until 1863. Prior to the last date she became the owner of the equity of redemption, but prevented a merger by electing to keep the mortgage interest distinct, and on the 3d day of June, 1863, she

assigned and transferred the note and mortgage to Levi Goodwin, the petitioner. Before this, in 1857, she had become the owner of the interest of Mrs. Holt, deceased, one of the other co-tenants, so that, after the assignment to Goodwin, she was the owner of three fifths of the premises, one fifth being subject to the mortgage. She died in 1864, and by virtue of her will Mrs. Kingsbury, now the sole respondent, is the owner of her interest in the premises.

This suit is brought to foreclose that mortgage. Pending the suit Goodwin, the petitioner, transferred the note and mortgage to Ralph Cheney and has since died. Cheney, by decree of court on a supplemental bill, was made a party petitioner. Mrs. Kingsbury had a claim against Goodwin, who died insolvent. The Superior Court allowed that claim in reduction of the petitioner's demand and decreed a foreclosure as to the balance.

Each party filed a motion in error, the petitioner assigning as error the allowance of the set-off, and the respondent assigning several errors, which we will first consider in their order.

1. The case shows that in the year 1832 Richard Goodman, the father, executed a deed of the premises to Abigail Goodman. That deed was never delivered, and was not recorded until 1849, four years after Richard's death. By whose agency it was then recorded is not known. Abigail did not know of its existence and never claimed anything under it. The respondent offered to prove on the trial the declarations of Richard, made at the time he executed his will, concerning that deed, for the purpose of showing that he regarded it as a part of the testamentary disposition of his estate. This testimony was rejected by the court. There was no error in this. Such declarations could convey no title and could give no effect to the deed, and they could not be regarded as a part of the will unless embodied in it.

2. It is claimed that the mortgage was void, inasmuch as it attempted to convey by metes and bounds the interest of the mortgagor in a part only of the common property. The court decided otherwise, and this is assigned as error.

The doctrine of the earlier cases in this state, contrary to the doctrine which prevails elsewhere, was, that such deeds were null and void. See cases cited and commented on in *Hartford and Salisbury Ore Co.* v. *Miller*, 41 Conn., 112. In that case we materially modified that doctrine and took one step in the direction of bringing the law of Connecticut into harmony with the law of our sister states, by holding that such a deed was not void, but, having been confirmed by deed by the other co-tenants, was valid. The rule in that case however should not be interpreted as requiring that the confirming act should in all cases be by deed, for that would give the rule a negative force which was not intended. We intended simply to hold that if the co-tenants by deed ratified the conveyance it was good and not void. We there said:—"Their assent, expressed by deed *or in some other proper manner*, seems to be required."

There is an underlying question suggested by this record which we do not propose to discuss, as we have no occasion to decide it, and that is, whether this deed, being by one tenant in common to a co-tenant, is within the rule.

The important question here is, whether the other tenants have so far assented to this deed that they are now precluded from objecting to its validity.

In Massachusetts such deeds are held good unless the co-tenants object. *Brown* v. *Bailey*, 1 Met., 254. We have not as yet adopted that doctrine. Our decisions indicate that the want of an objection is not sufficient. But this case does not depend upon mere silence; but that silence was continued for more than thirty years. The property has all passed out of the hands of the original tenants in common. Other persons have acquired interests in the property, some by deed and some by devise, and all, we may presume, knew of the existence of this mortgage and regarded it as valid.

If there was nothing else in the case it is at least doubtful whether, after so long a period of acquiescence, coupled with so many changes of title, there is any one now who is in a condition to raise this objection. However this may

be, we are clearly of the opinion that the respondent cannot do it, for reasons which we will briefly notice. The parties now before us are privy to the original parties to the mortgage. The petitioner represents the mortgagee and the respondent the mortgagor. Now suppose that, while those parties were living, the mortgagee had brought a petition to foreclose, could the mortgagor have set up the claim that his mortgage was void? Is it not clear that he would be estopped from denying the validity of his own deed? If so Mrs. Kingsbury, who holds under him, will be equally estopped. Take another view of the case. Abigail Goodman, while the owner of the mortgage, became the owner of the equity of redemption. She elected to keep the mortgage alive and subsequently sold it to Levi Goodwin. She thereby not only asserted the validity of the mortgage, but by the assignment she confirmed it by deed, if such confirmation be necessary. Suppose again that Levi Goodwin had brought a petition to foreclose against her in her lifetime. Will it be pretended that she would have been at liberty to deny the validity of the mortgage? Such a defence, if allowed, would operate as a direct and palpable fraud upon Goodwin. But Mrs. Kingsbury is no more at liberty to make this defence than Abigail would have been, for she acquired the title of the mortgagor from and through her.

3. The petition alleges that the assignment of the mortgage to Goodwin was made June 3d, 1863. Service by mailing a copy to Mrs. Kingsbury on the 1st of June, 1878, was held on demurrer to be good service as of that date. *Goodwin* v. *Keney*, 47 Conn., 486. It now appears that the assignment was dated May 7th, 1863, but was acknowledged and delivered June 3d, 1863. It is claimed that the case is within the statute, inasmuch as the suit was not brought within fifteen years after May 7th. The answer is that the record does not show that Levi Goodwin acquired any interest in the mortgage by agreement or otherwise prior to June 3d.

4. Abigail died in a little over one year after she assigned

to Goodwin. She paid no interest on the note after the assignment. After her death Henry Keney, as trustee for Albert Goodwin under her will, took possession of the premises, and Albert had the rents until his death in 1878. It is claimed that Levi was chargeable with the rents until Albert's death. We are at a loss to understand upon what ground this claim is made. Levi was not in possession and did not receive the rents, and no circumstances are disclosed which made it his duty to collect the interest of Albert. Albert died insolvent, and as he received the rents through a trustee we may presume that the interest was not collectible. If so it is inequitable that Levi should lose it. It may be that Albert, being the life tenant, as between himself and Mrs. Kingsbury was bound to pay the interest, but we do not see that Levi was legally responsible for not collecting it.

But it is said that this mortgage contained a clause authorizing the mortgagee to collect the rents. That clause is as follows:—" With authority to collect any and all rents that may become due to me from said premises, and apply the same towards the interest of my note." We suppose that any mortgagee may collect the rents from the mortgaged premises with or without such a clause in the mortgage; but we do not understand that he is chargeable with the rents unless he actually receives them, especially where it appears that the mortgagor or those representing him have received them.

5. It is objected that the husband of Mrs. Kingsbury should have been made a party respondent. This objection comes too late. It is in the nature of a plea in abatement, and after a demurrer followed by a trial on the merits, we must regard it as waived.

The petitioner was the sole owner of the mortgage note. The maker long since died, and there was no way to collect the note except from the security, and for that purpose a proceeding in equity was indispensable. The respondent was the sole owner of the equity of redemption, and on a foreclosure she must either pay the note or lose her property.

It was therefore in some sense a debt due from her. She at the same time had a claim against the petitioner which she could not collect in any form of action for the reason that he was insolvent. On his petition to foreclose she insisted upon setting off her demand against his claim, and the court allowed it. In doing so the petitioner says the court erred.

We think the set-off was properly allowed. Courts of equity in the matter of set-off usually follow the law; but in many cases, where there is some intervening equity, they will allow a set-off where a court of law would not. Is there such an equity in this case? It is a maxim of equity, and one of pretty general application, that he who seeks equity must himself do equity. This maxim is applicable more especially to the party who applies to the court for relief. The petitioner by thus applying has exposed himself to the full force of the maxim. By resisting the set-off he virtually says:—" Aid me in collecting my debt, and help me to resist the payment of a debt which I honestly owe." This the court cannot consistently do.

There would be less reason for applying the maxim if the petitioner was solvent, although even in that case there would be no injustice in it. But being insolvent, the case presented is one where the "natural equity" is very strong. Insolvency of itself will often raise an equity which will justify the interference of the court, even when the party desiring the set-off is himself the petitioner. It would seem to have greater force when the party opposing it is already in court seeking relief. *Pond* v. *Smith,* 4 Conn., 297; *Bowen* v. *Bowen,* 20 Conn., 127; *Rowan* v. *Sharp's Rifle Manufacturing Co.,* 29 Conn., 282; *Same* v. *Same,* 31 Conn., 1; *Lindsey* v. *Jackson,* 2 Paige, 581; *Foot* v. *Ketchum,* 15 Verm., 258; *Blake* v. *Langdon,* 19 Verm., 485; *Chamberlin* v. *Stewart,* 6 Dana, 33.

There is no error in the judgment complained of.

In this opinion the other judges concurred.