## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1851, AT LENOX.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. RICHARD FLETCHER,
Hon. GEORGE T. BIGELOW,
} Justices.

---

### John Adam & others *vs.* The Briggs Iron Company.

A bill in equity brought by one claiming an estate in three undivided fourths of the mines in a certain tract of land, with the right to pass and repass, to dig for and carry away the ores, against the owner in fee of the whole of the soil of said tract, for digging and carrying away ore, and wasting and destroying the same, and forcibly resisting and disturbing the plaintiff in the exercise of his rights, is not within the equity jurisdiction of this court, either on the ground of a nuisance by a disturbance of the use of a right of way, or as showing the parties to be tenants in common of the mines.

In a conveyance by one tenant in common of his estate in the land held in common, a reservation of his interest in the mines in and upon the land granted is void.

This was a bill in equity. The case was argued at September term, 1850, upon a demurrer to the bill, by *G. Ashmun*

and *W. G. Bates*, for the plaintiffs, and *J. Rockwell* and *J. D. Colt*, for the defendants.   The pleadings are sufficiently set forth in the following opinion, delivered at the same term, by

SHAW, C. J.   This suit in equity was brought by the children and grandchildren of Samuel Forbes, who died in Connecticut, the place of his domicil, in 1827; and they alleged themselves to be devisees under his will, or the heirs of those devisees.   They are all the descendants of Abigail Adam, wife of John Adam, and only daughter and heir at law of Samuel Forbes.   It was objected by the defendants, that the will of Samuel Forbes had not been filed in, or proved and allowed by any probate court in this commonwealth, and so that the plaintiffs could not claim title under it.   An amendment was afterwards allowed, by which the plaintiffs described themselves as heirs at law of Samuel Forbes.   The defendants, having previously filed a general demurrer to the original bill, relied upon the same demurrer to the amended bill, and thereby admitted the claim of the plaintiffs, as such heirs at law.

The bill sets forth that, on the 21st of December, 1790, Jared Lane was the owner in fee simple of three undivided fourths of lot No. 62, in the second division of lots in Lanesborough, (which lot contained one hundred acres,) and was seised and possessed of the same, and then sold the same to John and Titus Wood and Jonathan Weed, and executed to them a deed thereof, in due form of law, reserving, saving and excepting from said grant, a full and ample right to all the iron or other ores in and upon said premises, with the right of way to pass and repass, to dig for, to cart and carry away the same from said premises.   Of this deed, a copy is annexed, and referred to as part of the bill.   In comparing this averment with the deed, there is some variance in the phraseology.   In the deed it is thus expressed, " excepting, saving and reserving a full and ample right to all the iron and other ore, that may be found on the surface or in the bowels of the earth, of said one hundred acres of land, with liberty to pass and repass, cart and carry away the same."   This lot of one hundred acres is further described as originally laid out to John Peck.

The bill further proceeds to aver, that Lane occupied the premises, and took ore therefrom, and on the 22d of March, 1800, sold his said reserved and excepted rights and interest to Samuel Forbes, and by his deed conveyed all his said interest to said Forbes. It alleges, that Forbes used said ore-bed during his lifetime, by himself, his servants and lessees, as far as his interest was concerned; and denies any adverse possession of the ore-bed, until 1847.

The bill then avers, that the defendant corporation, well knowing the premises, and being apprised in particular of the record title of Forbes, and the peculiar grant in the deed from Lane to Wood, Wood and Weed, with reservation and exception of the ores, as aforesaid, purchased a title to the soil, wherein the plaintiffs are entitled to an easement, and other incorporeal rights, as aforesaid; and are now digging and carrying away the ore from said beds in a wasteful and unprofitable manner, and intend great waste and destruction; and expresses the plaintiffs' fears that the defendants intend the entire destruction of said ore, and irreparable injury to the plaintiffs. It alleges, that a person attempting, under the authority of the plaintiffs, to exercise their incorporeal rights in the premises, was driven away by force by the defendants' servants, whereby the plaintiffs were disturbed in the exercise of their incorporeal rights, and great wrong was thereby done thereto, to the nuisance of the plaintiffs in the premises. The bill prays for an account, an injunction and general relief.

The case came on to be argued upon the demurrer, the defendants insisting upon the ground, that this court had no jurisdiction in equity; because the facts set forth did not show a case of waste or nuisance. To constitute waste, they insisted there must be some relation, some privity of estate between the parties, and that no such privity was set forth in the present case. Whereupon, the plaintiffs, by their counsel, stated to the court, that they did not claim the jurisdiction on the ground of waste.

It was insisted in argument, that the case may be brought within the equity jurisdiction of this court, on the ground that

the bill charges and alleges a disturbance in the use of the plaintiffs' right of way, necessary to the use and enjoyment of their right to the ore and ore-beds.

It appears to the court, that the substance of the plaintiffs' complaint is, that they were possessed of an estate in the ore and ore-beds of the whole tract of land described, to the extent of three quarters thereof, with the right to dig for the same, place it on the grounds and carry it away — an incorporeal hereditament, indeed, but still an estate and real interest, that the defendants, being owners and in possession of the whole of the soil of said lot, denied their right to such ore and ore-beds, and right of opening them and taking and carrying away the ore, and forcibly resisted them and their servants in their attempts to do so. This, if true, might entitle the plaintiffs to an action of trespass, or trespass on the case, alleging or not alleging force; but the interruption of the right of way is mentioned merely as incidental and dependent, and not as the gravamen of the complaint. Were the plaintiffs' right to the ore and ore-beds, with the right of digging and carrying away the ore, admitted, and had they complained only of an interruption in going to and from the ore-beds, then the gravamen of their complaint, perhaps, would be a disturbance of their right of way only, and properly designated as a nuisance.

It was urged in argument, that the facts showed a case of tenancy in common of the mine, and therefore the court had jurisdiction. The objection to that view is, that no such case is set out in the bill; it nowhere asserts that the defendants are tenants in common with the plaintiffs in the mines. If it were so, and if the relief sought were to obtain a special decree, in the nature of a special partition, because, the common right being in its nature indivisible in the ordinary mode, it would be competent for this court to direct an equitable mode of using the right, which should do justice to both parties, the case would have stood very differently. On the contrary, the plaintiffs have rather studiously avoided alleging that the defendants had any interest in the mine, though they have alleged that the defendants had acquired a title in fee to

the soil. The court are therefore of opinion, that the bill does not present a case within the limited equity jurisdiction of this court.

After the delivery of the foregoing opinion, the plaintiffs having had leave to amend, amended their bill by averring that they were tenants in common of three quarter parts of the ore and ore-beds described, and of the right of opening and digging therefor, in all parts of said lot, and of laying the ores on every part of the same, with a right to enter and carry the ores away, and that the defendants were tenants in common of one quarter part of the same; alleging that the plaintiffs had no complete and adequate remedy at law to obtain partition; and praying a decree regulating the mutual enjoyment of their respective rights by the parties, in the nature of a special partition.

To this amended bill an answer was made, to which a replication was filed, and evidence was taken on both sides, the material part of which is stated in the opinion.

The case was argued at Boston, in February last, by *B. R. Curtis* and *W. G. Bates*, for the plaintiffs, and by *S. Bartlett* and *J. D. Colt*, for the defendants.

SHAW, C. J. The case again comes before the court on the question both of jurisdiction and of title.

Supposing the plaintiffs to have established their title to an undivided interest in the mines, ores and ore-beds, with the defendants, whether they be regarded as joint tenants, tenants in common, or partners, jurisdiction in equity of all questions and controversies between them, is conferred on this court, where there is not a plain and adequate remedy at law. Rev. Sts. *c.* 81, § 8. Supposing that there may be a right and estate in a mine, distinct from that of the soil in which it lies there seems to be a peculiar fitness in resorting to equity, to adjust and regulate the mutual rights of the parties. It is manifest that partition cannot be made by setting off the surface by metes and bounds, because the quantity and value of the mines and ores, and the capacity and facility of access for

31*

working them, bear no proportion to the area of the surface under which they lie. Indeed, in making partition at law, it has been found necessary to make special partition, directing the division of the profits, or the alternate enjoyment of the common property, as circumstances may require. In this commonwealth, such an estate in mines is very similar to a right and interest in water powers and mill privileges, which are held to be suitable subjects, when held by several, to be brought within the equity jurisdiction of this court. *Bemis* v. *Upham*, 13 Pick. 169 ; *Bardwell* v. *Ames*, 22 Pick. 333.

The impossibility that each party should work his own undivided part of a mine, practically prevents that mode of enjoyment, and manifestly requires some judicial proceeding to secure their respective rights. The working of a mine, in which there may be many owners, and in which each may set out an aliquot part of his whole interest, is regarded in England as a species of trade and partnership, which requires the interposition of equity jurisdiction, to adjust controversies. *Jefferys* v. *Smith*, 1 Jac. & Walk. 298. So where real property, as in mines and ore-beds, is so situated, that dower cannot be conveniently assigned at law, equity will take jurisdiction. *Stoughton* v. *Leigh*, 1 Taunt. 402.

But the main question, after all, is, whether the plaintiffs have proved any tenancy in common between themselves and the defendants in the ore and ore-beds.

We suppose it well settled, that there may be a separate estate in mines and ores, distinct from that of the land in which they are found. But *primâ facie*, the owner of freehold lands is entitled to all the minerals and strata of coal, clay, ore, lime, marble and the like, not as a separate estate, but as a part of the fee and inheritance, and they will all pass by descent, or by conveyance, without special designation. But this presumption may be rebutted by evidence, showing a severance of the mines, and a distinct estate and interest in them, by grant or reservation; that is, the owner of the fee, having the general power of disposal, may grant all the ores and minerals, or any particular species of them, as lead, coal, marble, or the like, and still remain general owner of the land

Adam & others *v.* Briggs Iron Company.

or he may grant the land, and except and reserve the mines to himself and his heirs. Or such grant or reservation may be established by proof of such adverse, exclusive and long continued use and enjoyment of the mines against the general owner of the land, as would amount to satisfactory proof of a lost deed, containing such grant or reservation. But, until such severance by the general owner, and the creation of such a distinct incorporeal right in the ores and minerals, is established by proof, they are to be deemed an inseparable part of the freehold, and pass with it in whole or in part, by deed or by act of law, as inseparably embodied in the freehold.

But when so severed by the general owner, and thus consti tuted a distinct estate, mines are still regarded as real estate, and the general laws regarding real estate will apply to them. They must be transferred by deed; contracts in relation to them are within the statute of frauds; dower is to be assigned in them; *Billings* v. *Taylor*, 10 Pick. 460; and all other rules regulating title to real estate, so far as they are applicable, will apply to them. In this commonwealth, in case of the decease of the owner intestate, they will descend equally to all the children; and in that respect are similar to the case of a descent in coparcenary to sisters in England. There, if the property consist only of mines, and these are incapable of convenient and separate partition, the respective rights of the owners will be regulated, and the profits divided, by a commission out of chancery. Bainbridge on Mines, 116. It appears therefore, that the rights to ores and minerals, though em braced in the fee, are capable of being severed by the owner but have no distinct existence until severed; but when so severed, they are capable of being held, conveyed and trans mitted, by will or inheritance, and of being a separate estate carved out of the fee.

It is contended on the part of the defendants, in the presen case, that the relation of tenants in common of these ores does not exist between the parties, because the deed under which the plaintiffs claim, although it conveys three fourths of the land only, excepts and reserves, in terms, all the iron and

other ore under the whole hundred acres; and so, if the plain-tiffs have any title, they are sole owners. All the conveyance, out of which such reservation and exception are made, is of three undivided fourth parts only of the soil of the hundred acres. The literal form of the reservation is of the whole; but perhaps this can hardly be regarded as the true meaning. The form being· that of a reservation, the ordinary construc-tion must be, that the reservation must be, out of the grant, of something, which, but for the reservation and exception, would have passed by it, and must, by implication, be so re-stricted. Had there been a previous severance of the estate in the ore from the general estate in the land, the terms of the exception might have been so construed. But on the con-trary, it appears by the evidence, that Lane, the grantor, had acquired a title in fee to three undivided fourth parts of the land, and no more. The case shows no evidence of any such anterior severance of the ore from the general right. On the contrary, the case stated for the plaintiffs is, and we believe it so appears from the deeds, that Peck, being the owner of the whole in severalty, conveyed one quarter to Martin, and three quarters to Caldwell; that Caldwell, by two deeds, conveyed the same three quarters to Smith; and that Smith, by two deeds, conveyed the same to Lane, who first made the excep-tion and reservation of the ores in his deed to Wood, Wood and Weed, under whom the plaintiffs claim. This deed, with its exception and reservation, is relied on as a severance.

This brings us to the specific ground of defence, which is, that the attempt to sever the ore from the general interest in the land, is void, as a grant by a co-tenant, whether it be re-garded as an incorporeal hereditament, or as a distinct estate; because it is an attempt to create a new and distinct tenancy in common, between the one co-tenant and others, in distinct parts of the common estate, which is contrary to the rules of law. And the court are of opinion that this is a good ground of defence.

It is entirely settled as a rule of law, in relation to land, that the conveyance of any separate estate, by a tenant in common, by metes and bounds, is void as against the co

tenants, and is available only by way of estoppel against the grantor and his heirs. *Bartlet* v. *Harlow*, 12 Mass. 348; *Varnum* v. *Abbot*, 12 Mass. 474; *Blossom* v. *Brightman*, 21 Pick. 283, 285; *Baldwin* v. *Whiting*, 13 Mass. 57; *Peabody* v. *Minot*, 24 Pick. 329. The ground upon which this doctrine is established is, that a tenant in common of an entire estate is entitled, on partition, to have his purparty assigned in one entire parcel, according to his aliquot part. The respective co-tenants may convey their shares to one or many grantees, as they please, so it be of the entire estate; because, whether there be one or many co-tenants, each may still have partition, which is inseparably incident to an estate in common, and have it in one parcel, and of like kind and quality with the estate which he holds in common. I have a moiety; my co-tenant has a moiety. He may convey a quarter of the whole estate to one, an eighth to another, a sixteenth to another, and so on indefinitely, letting in other co-tenants with me. But all being seized of aliquot parts, in the same estate, and of like kind and quality, my right to partition is not disturbed by the number of co-tenants. But if he could convey his aliquot part, in specified parcels of the estate, he might diminish the value of my right, if not render it worthless.

We have seen that it is competent for a general owner not only to divide his estate by metes and bounds, and convey one parcel to one, and one to another, but also to divide it in another mode, by conveying mines to one, and quarries to another, and retain the general interest in the soil; and these special estates, when thus legally severed, may pass to heirs, devisees and purchasers, and be attended with all the incidents, and be governed by the common rules applicable to the holding of real estate. But if the owner of an undivided part of a real estate could do this, it would be attended with all the inconveniences to the co-tenants, arising from a conveyance of his interest in a particular part by metes and bounds. Suppose the defendants had not acquired the three quarters of the general estate, which was conveyed by Lane to Wood, Wood and Weed, they would still have had one quarter of the entire estate, under their anterior title, with all the ores,

minerals and quarries, opened or unopened, known or hidden, and would have been entitled to a partition, which would have given them a similar title to a quarter part in quality and quantity, by metes and bounds, so as to have an estate similar in character, to wit, a fee simple of such quarter, set off and divided, with all its incidents of mines, quarries and ore-beds, within those limits. If Lane's deed, conveying three quarters of the general estate to Wood, Wood and Weed, reserving three quarters of the ore and ore-beds to himself and his heirs, could avail against his co-tenants, the owners of this entire fourth part of the whole estate, with all its incidents unimpaired, with all its ores and mines unopened and unsevered, would be compellable to divide the soil, or general estate, with one set of co-tenants, and the mines and ores, with another or many other sets of co-tenants. Such a result would be attended with all the mischief and inconvenience arising from the act of a co-tenant, in attempting to convey his undivided part, in a particular parcel, instead of an aliquot part in the whole common estate. The same reasons, upon which it is held that such a conveyance is void against co-tenants, will also avoid the act of a part owner, in attempting to parcel out rights, in their nature indivisible, in definite portions of the inheritance, as the mines to one, and the general estate to another. For these reasons, we are of opinion that the reservation in the deed of Lane to Wood, Wood and Weed, Lane being himself a tenant in common of three fourths of the entire freehold estate concerned, was void, and that his subsequent deed to Samuel Forbes was void also, and that no interest or estate in the ore and ore-beds passed by it.

This view of the effect of the deed, which lies at the foundation of the plaintiffs' title, renders it unnecessary to consider whether the reservation was personal to the grantor for want of words of limitation to his heirs and assigns, or whether, by implication, a reservation out of a grant in fee was the reservation of an inheritable interest. It is also unnecessary to consider many other questions, both of fact and of law, which have been incidentally discussed.

*Decree accordingly for the defendants.*