## JOHN P. IANOTTI ET AL. *v.* ROSE CICCIO
## (14081)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued March 26—decision released May 28, 1991

*Arnold Sbarge,* with whom, on the brief, was *Craig S. Taschner,* for the appellants (plaintiffs).

*Edward T. Lynch, Jr.,* with whom, on the brief, was *Dennis G. Ciccarillo,* for the appellee (defendant).

PETERS, C. J. The issues in this appeal are: (1) the extent to which one cotenant can convey an easement in land without the contemporaneous consent or subsequent ratification of the other cotenant; and (2) the residual power of the latter cotenant to avoid such a conveyance. The plaintiffs, John and Dechantel Ianotti, brought the underlying action to quiet title[1] to land that they held as joint tenants, and in which the defendant, Rose Ciccio,[2] claimed an easement by virtue of a purported quitclaim deed signed by John Ianotti alone. The defendant raised a special defense that the deed was effective to convey the disputed easement to her. In a cross complaint, she further alleged that the plaintiffs had interfered with her rights in the easement.

The trial court found that the deed had effectively conveyed to the defendant an easement in the plaintiffs' property and accordingly rendered judgment for the defendant on the plaintiffs' complaint. Because Dechantel Ianotti had not signed the quitclaim deed, however, the trial court concluded that the instrument was ineffective to convey any of her interest as a joint tenant in the property in question. The court also found that the plaintiffs had not interfered with the defendant's easement and accordingly rendered judgment for the plaintiffs on the cross complaint. The plaintiffs appealed to the Appellate Court and we transferred

---

[1] The plaintiffs brought their action pursuant to General Statutes § 47-31, which provides in relevant part: "(f) The court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property."

[2] At the time of the trial the parties stipulated that any decision would be binding upon Joseph Ciccio, the husband of the defendant.

the appeal to ourselves pursuant to Practice Book § 4023. We now reverse.

The record discloses the following facts. In 1964, the plaintiffs held title as joint tenants to a parcel of property in the town of Plainville. Redstone Hill Road bounds this property on the west. During that year, the defendant and her husband, Joseph Ciccio, entered into negotiations with the plaintiffs to purchase a sixteen acre eastern portion of their property. The sixteen acre parcel lacked frontage on any public road and the defendant would have had to cross the plaintiffs' property to reach Redstone Hill Road, the nearest public access.

By warranty deed executed on May 8, 1964, and duly recorded, the plaintiffs jointly conveyed to the defendant and her husband the sixteen acres of land that had been the subject of negotiations. Shortly after the Ciccios began construction of a house on the purchased property, they became aware that the deed made no mention of any easement.[3] The defendant's attorney thereupon prepared a quitclaim deed describing a ten foot wide easement running east-west from the defendant's property, through the plaintiffs' property, to Redstone Hill Road. The deed, although describing the plaintiffs as grantors, bears John Ianotti's signature only, and was neither witnessed nor acknowledged. The deed is dated March 8, 1965, and was recorded in the

---

[3] The parties disputed at trial whether the acquisition of an easement through the plaintiffs' property had been part of the purchase and sales negotiations over the sixteen acres of land. Joseph Ciccio testified at trial that an easement had been negotiated and approved by the parties in determining the ultimate purchase price for the plaintiffs' land. The trial court made no factual findings on whether such discussions had actually occurred, or whether the parties had intended that an easement be included as an incident to the sale of property. Significantly, the defendant did not seek reformation of the deed, to reflect the existence of the easement, on the grounds of mutual mistake or scrivener's error.

Plainville land records on September 8, 1969. Dechantel Ianotti testified that she had been unaware of the quitclaim deed until a prospective purchaser brought it to her attention. When the plaintiffs became aware of the effect that the quitclaim deed might have on the marketability of their property, they brought this action to quiet title.

At trial, the parties focused on two issues: (1) whether the quitclaim deed conveyed any interest in the plaintiffs' property to the defendant, in light of the deficiencies in the deed's execution and the validating effect of No. 87-12 of the Special Acts;[4] and (2) whether the defendant had acquired a prescriptive easement in the plaintiffs' property, specifically, in Dechantel Ianotti's interest therein. The trial court concluded that, although the defendant had failed to prove her claim to a prescriptive easement,[5] she had acquired a cognizable interest by the quitclaim deed that No. 87-12 of the Special Acts had validated. Because Dechantel Ianotti had not signed the deed, however, the trial court further concluded that the only interest that the instrument had effectively conveyed to the defendant was an easement in John Ianotti's interest in the property. The trial court rendered judgment to this effect on the plaintiffs' complaint.

On appeal, the plaintiffs do not challenge the trial court's finding that No. 87-12 of the Special Acts vali-

[4] No. 87-12 of the Special Acts, § 3 provides in relevant part: "CONVEYANCES. (a) No deed . . . made for the purpose of conveying . . . real property in this state and recorded prior to the effective date of this act in the land records of the town in which such real property is located shall be deemed invalid, because any such deed . . . (1) Was not acknowledged or was improperly acknowledged . . . . (3) Was attested by one witness only or by no witnesses."

[5] The defendants apparently entered and exited their property by way of Norton Trail, a nonpublic park road owned by the town, which bordered their property to the north and east.

dated the quitclaim deed. Instead, they contest the validity of the court's conclusion that the deed, although signed only by John Ianotti, nonetheless effectively conveyed to the defendant an easement in property that the plaintiffs held as joint tenants.

## I

The plaintiffs base their appeal on the common law rule that a deed representing one cotenant's[6] attempt to grant an interest in a distinct portion of property held in cotenancy is voidable by the nonconsenting cotenant. The defendant counters that John Ianotti, as the sole signer of the deed, is estopped to deny its validity. She argues further that under the common law rule upon which the plaintiffs rely, the deed can be enforced without prejudice to the property rights of the nonassenting cotenant, Dechantel Ianotti. The defendant asserts that her use of the disputed easement is not presently inconsistent with Dechantel Ianotti's interest in the property, and that any adjudication as to possible future inconsistent uses would be premature. We agree with the plaintiffs that, through their action to quiet title, they have effectively exercised their right to avoid the deed executed by John Ianotti, thereby rendering it unenforceable.

## A

Our evaluation of the trial court's decision turns on our resolution of the question whether a grantee can hold an easement in one cotenant's undivided interest in property without adversely affecting the undivided interest of the other nonconsenting cotenant. In a long series of cases dating back to the early nineteenth century, this court has been called upon to consider the

---

[6] Although the plaintiffs held title to their property as joint tenants, and not as tenants in common, that distinction is irrelevant to the issues in this case. Our opinion, therefore, refers to cotenancy relationships in general.

ramifications of a single cotenant's attempt to convey or encumber an interest in land, such as an easement, without the consent of the other cotenant. See, e.g., *Starr* v. *Leavitt,* 2 Conn. 243 (1817); *Hinman* v. *Leavenworth,* 2 Conn. 244n. (1813); *Mitchell* v. *Hazen,* 4 Conn. 495 (1823); *Griswold* v. *Johnson,* 5 Conn. 363 (1824); *Marshall* v. *Trumbull,* 28 Conn. 183 (1859); *Hartford & Salisbury Ore Co.* v. *Miller,* 41 Conn. 112 (1874); *Stevens* v. *Norfolk,* 46 Conn. 227 (1878); *Goodwin* v. *Keney,* 49 Conn. 563 (1882); *Pastine* v. *Altman,* 93 Conn. 707, 107 A. 803 (1919).

This recurrent tension in cotenancy relationships arises out of the very nature of cotenancy property interests: each cotenant holds an undivided partial moiety or interest in the *whole* of their property. "[T]he common characteristic of all such interests [is that] the owners have no separate rights as regards any distinct portion of the land, but each is interested, according to the extent of his share, in every part of the whole land." 2 H. Tiffany, Real Property (3d Ed. 1939) § 417. A consequence of this form of ownership is that a cotenant can freely sell, lease or mortgage his own undivided interest in the whole of the property to a third party without the consent of the remaining cotenants. Id., §§ 453, 458; 4A R. Powell, Real Property (1991) ¶¶ 606 [4], 617 [4]. A cotenant may not, however, act unilaterally so as to bind the interest of his cotenant. 2 H. Tiffany, supra, § 451; 4A R. Powell, supra, ¶ 606 [4].

This court first held invalid one cotenant's attempted reservation of an easement in a distinct part of a common estate in *Marshall* v. *Trumbull,* supra, a case upon which the plaintiffs herein place much emphasis. The plaintiff in that case was a cotenant in a gangway leading from property that he owned in severalty to adjoining property. When the plaintiff sold his lot and his

interest in the gangway, he attempted in the deed to reserve a right to pass through the gangway to a wood-house on an adjoining lot. Equating the reservation with an easement, this court characterized the issue as follows: "Assuming that it would have been good had the plaintiff owned in fee the whole gangway instead of an undivided portion of it, it resolves itself into a question, whether a tenant in common can create such an easement in the common estate. In other words, could the plaintiff, before he deeded his interest in the gangway, have conveyed such an easement to a stranger; or, had his deed contained no such clause of exception or reservation, could his grantee, after he had become a tenant in common with the [other owners of the gangway], have reconveyed to the plaintiff the right which he now claims." Id., 184.

We rested our decision in *Marshall* on the established rule "that one tenant in common can neither sell nor incumber any part of the estate by metes and bounds, so as to prevent such a division or distribution as would give the other tenants in common an unincumbered title to the part thus sold or incumbered." Id., 185; see *Griswold* v. *Johnson,* supra, 366; *Mitchell* v. *Hazen,* supra, 510; *Starr* v. *Leavitt,* supra, 246; *Hinman* v. *Leavenworth,* supra, 245n.[7] We concluded that the right to pass involved in the case was, by its very nature, to be exercised upon a specific part of the land, and that it was "impossible to conceive" of that right being

---

[7] This rule is in accord with cases in other jurisdictions. See, e.g., *Texas Mortgage Co.* v. *Phillips Petroleum Co.,* 470 F.2d 497 (5th Cir. 1972); *Crommelin* v. *Fain,* 403 So. 2d 177 (Ala. 1981); *Carbine* v. *Meyer,* 126 Cal. App. 2d 386, 272 P.2d 849 (1954); *Morrison* v. *Clark,* 89 Me. 103, 35 A. 1034 (1896); *Burnham* v. *Baltimore Gas & Electric Co.,* 217 Md. 507, 144 A.2d 80 (1958); *Silverman* v. *Betti,* 222 Mass. 142, 109 N.E. 947 (1915); *Benjamin* v. *American Telephone & Telegraph Co.,* 196 Mass. 454, 82 N.E. 681 (1907); *Palmer* v. *Palmer,* 150 N.Y. 139, 44 N.E. 966 (1896); *Ecenbarger* v. *Lesoine,* 438 A.2d 969 (Pa. Super. 1981).

exercised "without interrupting and infringing upon the rights of the proprietor who might have that portion of the gangway which adjoins the woodhouse aparted and set to him." *Marshall* v. *Trumbull,* supra, 185.

The reason for the rule announced in the cited cases derives from the fact that while a cotenant has a right, on a partition, to a share of the common estate, he has no right to demand any *particular* part thereof. See, e.g., *Griswold* v. *Johnson,* supra; *Mitchell* v. *Hazen,* supra; *Hinman* v. *Leavenworth,* supra, 245n. It follows that if a cotenant cannot demand a particular parcel of the common estate on partition, he similarly cannot create such a right in a grantee of a particular parcel. To allow the cotenant to do so would be to allow him to prejudice the interests of his cotenants on a partition, which is precisely what the rule is designed to prevent. *Pastine* v. *Altman,* supra, 712; *Stevens* v. *Norfolk,* supra, 229; *Hartford & Salisbury Ore Co.* v. *Miller,* supra, 131–32. As the court said in *Mitchell* v. *Hazen,* supra, 510, "if [the cotenant] is permitted to divide the common property into distinct moieties, by metes and bounds, and then dispose of a certain proportion in the property thus separated, he prejudices his cotenant. On writ of partition, the moiety thus divided, and disposed of, undoubtedly, may be aparted to the other tenant; and his right to claim such partition, cannot be impaired, without his consent." See also *Adam* v. *Briggs Iron Co.,* 61 Mass. (7 Cush.) 361, 369 (1851); *Ballou* v. *Hale,* 47 N.H. 347, 350–51 (1867).

B

The court in *Marshall* characterized the deed purporting to convey an interest in the gangway as void. *Marshall* v. *Trumbull,* supra, 185; see also *Mitchell* v. *Hazen,* supra, 511 (deed described as "an utter nullity").

These cases suggest that such a deed was incapable of supporting even a grantee's claim of estoppel against the grantor. See, e.g., *Mitchell* v. *Hazel,* supra, 512. Had our law ceased to develop beyond its expression in *Marshall,* that decision would be dispositive of this case. The quitclaim deed, signed solely by John Ianotti, and purporting to have conveyed an easement to the defendant, would be null and void. The disputed easement, therefore, would not encumber the plaintiffs' title to their property.

Subsequent decisions, however, have sufficiently modified the common law rule so as to put into question whether a different result than that reached in *Marshall* is required in this case. Under the modified rule, a deed manifesting one cotenant's attempted transfer of an interest is voidable, not void. Consequently, such a deed is susceptible of ratification. The deed can also operate as an estoppel against the grantor. *Pastine* v. *Altman,* supra, 713; *Goodwin* v. *Keney,* supra, 566; *Stevens* v. *Norfolk,* supra, 229; *Hartford & Salisbury Ore Co.* v. *Miller,* supra, 132.

The plaintiffs argue, and our review of the record confirms, that Dechantel Ianotti never ratified the quitclaim deed by which her husband purported to grant an easement to the defendant. She neither signed the deed, nor executed and delivered her own deed. Significantly, although the trial court made no such express factual finding, Dechantel Ianotti testified that she had been unaware of the existence of the quitclaim deed until it had been brought to her attention by a prospective purchaser of the plaintiffs' property. The trial court's express finding that the defendant had acquired none of Dechantel Ianotti's interest in the plaintiffs' property is inconsistent with any claim of ratification.

The defendant did not argue at trial that a consensual agency relationship existed between John and Dechantel Ianotti, such that John Ianotti's execution of the quitclaim deed was effective to bind Dechantel thereto. Furthermore, the mere fact of a cotenancy is insufficient, as a matter of law, to establish an agency relationship; *Commission on Human Rights & Opportunities* v. *Veneri,* 157 Conn. 20, 24, 244 A.2d 401 (1968); 4A R. Powell, supra, ¶ 606 [3]; 2 H. Tiffany, supra, § 451; nor can such a relationship be grounded solely on the basis of the plaintiffs' marriage. *Botticello* v. *Stefanovicz,* 177 Conn. 22, 26, 411 A.2d 16 (1979); *Commission on Human Rights & Opportunities* v. *Veneri,* supra, 24. Finally, in the absence of any awareness of the deed's existence, Dechantel Ianotti's failure affirmatively to object to the quitclaim deed prior to initiation of this action cannot support a claim that she has waived her right to object in this action. See, e.g., *Goodwin* v. *Keney,* supra, 566.[8]

## II

The defendant contends that even in the absence of ratification, the quitclaim deed is nonetheless effective to support her claim to the easement. Her argument in support of this contention comes in two parts. She first claims that her right to the easement should be enforced against Dechantel Ianotti because there is nothing in the record to suggest that her exercise of

---

[8] The trial strategy pursued by the defendant required her to prove that the quitclaim deed had been validated by Special Act No. 87-12 and that she had acquired a prescriptive easement in Dechantel Ianotti's interest in the plaintiffs' property. Consequently, whether Dechantel Ianotti "ratified" the deed by her silence was an issue that the defendant was not required to address. To quiet title to the Ianottis' interest in the property now, the defendant argues, would deprive her of the opportunity to address that issue. We are unpersuaded. The defendant adopted a particular theory of the case at trial, namely, that John Ianotti's deed, in combination with a prescriptive easement, was sufficient to support her claim to an easement. Having failed to prove her prescriptive easement claim, the defendant is not now entitled to retry the case on a new theory.

that right would be inconsistent with the preservation of Dechantel Ianotti's rights in her property. She next claims that the quitclaim deed is operative to support a claim of estoppel against John Ianotti. In support of these propositions, the defendant directs our attention to this court's decision in *Pastine* v. *Altman,* supra, 714, wherein we stated: "The weight of authority in other jurisdictions seems to be that while a conveyance by a tenant in common of a portion of the common estate by metes and bounds cannot impair or vary the rights of a nonassenting tenant in common, the law will give effect to it so far as may be done consistently with the preservation of the entire rights of the tenants in common, and no further."

We disagree with the defendant's contention that her claim to an easement is not inconsistent with the preservation of Dechantel Ianotti's rights in the plaintiffs' property. The defendant's argument appears to be premised on the supposition that, while the conveyance of a fee interest in property may prejudice the rights of nonassenting cotenants, the degree to which the conveyance of a mere easement infringes on the property rights of a nonconsenting cotenant, such as Dechantel Ianotti, is "trivial." Our decision in *Marshall* recognizes no distinction between fee interests and easements in property, and we have found no other case that suggests that an easement constitutes a negligible burden on the servient tenement.

The defendant fails to recognize that, as a cotenant, Dechantel Ianotti has the right to "use and enjoy the entire property as if [she] were the sole owner, limited only by the same right in" her husband. 4A R. Powell, supra, ¶ 603 [1]. Thus, while she may not exclude her husband from any part of the property, she may exclude noncotenants, such as the defendant. Consequently, the defendant's claim to an easement is in direct conflict with Dechantel Ianotti's rights as a cotenant.

We also disagree with the defendant's estoppel argument. While the defendant is correct in asserting that the quitclaim deed may support a claim of estoppel against John Ianotti; *Pastine* v. *Altman,* supra, 713; *Stevens* v. *Norfolk,* supra, 229; *Hartford & Salisbury Ore Co.* v. *Miller,* supra, 132; her argument fails to recognize *when* the estoppel is capable of becoming effective. The cases generally have held that while a cotenant who attempts to convey an easement without the consent of all cotenants is estopped to deny the validity of the deed, a grantee can benefit from such an estoppel only at such time, if ever, that the grantor acquires sole title to the property in which the purported easement lies. See, e.g., *Varnum* v. *Abbot,* 12 Mass. 474, 476 (1815); *Ballou* v. *Hale,* supra, 351; but see *Pastine* v. *Altman,* supra. Implicit in these decisions is a recognition of the possibility that the grantor may never acquire sole title to the property and that the grantee, therefore, may never benefit from an estoppel.

As the preceding discussion illustrates, our law now recognizes the possibility that the quitclaim deed might have become effective in the future by way of an estoppel against John Ianotti. The defendant's mere expectancy of that event is, however, insufficient to encumber the plaintiffs' title to their property. The rule is clear that a deed is voidable by the nonconsenting cotenant; *Pastine* v. *Altman,* supra, 713; *Hartford & Salisbury Ore Co.* v. *Miller,* supra, 132. Thus, by initiating and prevailing in this action, the plaintiffs, Dechantel Ianotti in particular, have invalidated the quitclaim deed. It is no longer effective to encumber the plaintiffs' title to their property in any way.[9]

---

[9] The plaintiffs conceded at oral argument that, if they prevailed in the underlying action to quiet title, the defendant would have a right to a return of the consideration paid in exchange for the quitclaim deed. Whether the

This court's decision in *Pastine* v. *Altman,* supra, is not inconsistent with our resolution of this case. In contrast to the easement at issue here, *Pastine* involved an attempt by certain cotenants in a building to lease to the defendant two floors therein without the consent of the plaintiffs, who were also cotenants. In a prior action, the nonconsenting cotenants had had the lease declared null and void as against them. The defendant apparently refused to vacate the premises and the plaintiffs then brought an action in ejectment, the underlying action in *Pastine.*

The court characterized the issue in *Pastine* as "whether the lease, although wholly inoperative against the plaintiffs, may nevertheless continue to operate as an estoppel against the" cotenants who had executed the lease. Id., 713. The court construed the lease as "no more than a permission" for the defendant "to stand in the shoes" of the cotenants who had executed the lease. Id., 711. The defendant claimed only a right of possession of the two floors in common with the plaintiffs, and, therefore, took the place of the cotenants who had executed the lease, with respect to the two floors of the building. The court held that such an arrangement did not prejudice the plaintiffs. Furthermore, the judgment in the prior action, which had invalidated the lease as against the plaintiffs, protected the plaintiffs' rights to the entire building in the event of a partition.

In reaching its conclusion, the court in *Pastine* carefully distinguished the lease considered therein from

defendant is entitled to any other measure of damages is a question that we do not decide in this case. We also need not decide whether the deed had been effective to convey some form of John Ianotti's interest in the property during the period prior to the plaintiffs' initiation of this quiet title action. We hold only that, as a consequence of this quiet title action, the quitclaim deed is ineffective to encumber the plaintiffs' title to their property.

other forms of property interests, including the easement at issue in *Marshall* v. *Trumbull,* supra. With respect to the two floors of the building, the lease, in effect, made the defendant a cotenant with the plaintiffs for the duration of the lease. See *Barnum* v. *Landon,* 25 Conn. 137, 150 (1856). The same cannot be said of the claimed easement in this case. An easement, unlike a lease, does not create a landlord-tenant arrangement whereby the landlord relinquishes possession of the estate to the tenant. The quitclaim deed did not purport to allow the defendant to stand in John Ianotti's shoes with respect to the easement. For these reasons, the decision in *Pastine* does not inform the outcome in this case.

## III

The defendant contends that, whatever the status of the common law rule prohibiting one cotenant from impairing the interest of the other, General Statutes § 47-14c[10] has displaced that rule and, as applied to the facts of this case, supports the defendant's claim to an easement. The defendant's argument, based on this section, that the quitclaim deed was effective to make her a tenant in common in the easement with the plaintiffs. We disagree.

We most recently considered the effect of § 47-14c in *Liscio* v. *Liscio,* 204 Conn. 502, 528 A.2d 1143 (1987). In that case, the plaintiff administratrix' deceased husband had been a joint tenant with the plaintiff in

---

[10] "[General Statutes] Sec. 47-14c. CONVEYANCE BY LESS THAN ALL JOINT TENANTS. Except as otherwise provided . . . a conveyance of any interest or interests in any joint tenancy by less than all of the joint tenants to a person or persons other than one of the remaining joint tenants severs the joint tenancy as to the interest or interests so conveyed and the grantee or grantees thereof shall hold the interest or interests as tenant or tenants in common with the remaining joint tenant or tenants. When there is more than one such remaining joint tenant, the conveyance does not alter the character of the tenancy or its incidents among the remaining joint tenants."

a certain piece of real property. The decedent had quitclaimed any interest that he had held in the property to a third party. Id., 504. We held that the quitclaim deed extinguished the existing joint tenancy between the decedent and his wife and passed an undivided one half interest in the property to the grantee, who then held the property as a tenant in common with the decedent's wife.

In contrast to the present case, in *Liscio,* the decedent's transfer of his own undivided one half interest in the property was valid. Thus, we applied the terms of § 47-14c to an otherwise valid transfer of an interest in land. We were not required to consider whether the section somehow validated the transfer of an interest that would otherwise have been invalid under the common law rule expressed in *Marshall* v. *Trumbull* and subsequent cases.

We conclude that § 47-14c does not require a departure from the common law rule. The section, by its terms, does not determine the validity of an attempted transfer of a particular property interest. Instead, the section applies only if a transfer of an interest by a joint tenant is otherwise valid. Because we conclude that the quitclaim deed at issue in this case is invalid, the condition precedent to the applicability of § 47-14c—a *valid* transfer of an interest—has not been satisfied.[11]

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiffs.

In this opinion the other justices concurred.

---

[11] We note also that the legislative history of General Statutes § 47-14c supports our interpretation of the section. The purpose of the section was to resolve problems associated with so-called "survivorship deeds" by transforming them into common law joint tenancies. Joint Standing Committee Hearings, General Law, March 9, 1959, p. 592. There is no indication whatsoever that the legislature intended the section to supersede the common law rule expressed in *Marshall* v. *Trumbull,* 28 Conn. 183 (1859), and subsequent cases.