Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/12/2021 09:11 AM CST

Pat Harts et al., appellees, v. County of Knox,
Nebraska, appellant, and Epic Land and
Cattle, LLC, intervenor-appellant.

___ N.W.2d ___

Filed December 18, 2020.    No. S-20-014.

1. **Political Subdivisions: Judgments: Appeal and Error.** In appeals
   involving a conditional use permit or special exception under Neb. Rev.
   Stat. § 23-114.01(5) (Reissue 2012), the findings of the district court
   have the effect of a jury verdict and the court's judgment will not be
   set aside unless the court's factual findings are clearly erroneous or the
   court erred in its application of the law.
2. **Decedents' Estates: Property.** The right to possession of an intestate's
   property and the right to take through intestate succession accrue imme-
   diately on the death of the ancestor, subject only to the control of the
   court for purposes of administering the estate.
3. **Easements.** Any person with a possessory interest in land may create an
   easement burdening that person's interest; however, that easement can-
   not last beyond the interest held in the burdened property by the grantor
   of the easement.
4. ____. Co-owners must act together to burden their land with an ease-
   ment and other servitudes.
5. **Estoppel: Deeds.** Estoppel by deed is a defensive bar which precludes
   one party to a deed and his or her privies from asserting as against
   another party and his or her privies any right or title in derogation of the
   deed or from denying the truth of any material facts asserted in it.
6. **Ratification: Agents: Words and Phrases.** Ratification is the affirm-
   ance of a prior act done by another, whereby the act is given effect as if
   done by an agent acting with actual authority.

Appeal from the District Court for Knox County: Mark A.
Johnson, Judge. Affirmed.

John Thomas, Knox County Attorney, for appellant.

Jason S. Doele and Tracey L. Buettner, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, P.C., L.L.O., for intervenor-appellant.

Mark D. Fitzgerald, of Fitzgerald, Vetter, Temple, Bartell & Henderson, for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

In 2003, H & H Cattle Co. (H & H Cattle), the predecessor in interest of Epic Land and Cattle, LLC (Epic), obtained an impact easement from Bernadette Tramp, the mother of the plaintiffs in this action. Such an impact easement was required by the zoning regulations of the County of Knox, Nebraska (County), where a feedlot was to be constructed within a particular distance of a dwelling unit or other designated location. Thereafter, the County's board of supervisors approved a conditional use permit for an expansion of H & H Cattle's feedlot to 6,000, and later 7,500, head of cattle.

Approximately 14 years later, H & H Cattle sought expansion of its feedlot to 20,000 head of cattle. Relying in part on the 2003 impact easement, the board of supervisors granted the conditional use permit to allow expansion. Pat Harts, Donna Poppe, Mardell Hochstein, Kelly Tramp, Sandee Zoucha, Allen Tramp, Carol Norris, and Dale Tramp (collectively the children) challenged the approval in district court. Following a trial de novo, the district court reversed and vacated the decision approving the permit. The County and Epic (collectively appellants) appeal. We affirm.

## BACKGROUND

At issue in this appeal is an easement purportedly granted over a quarter section of land located in the County. Prior

to 1951, the land was owned by Emma Tramp. Emma deeded this quarter section to her son, Sylvester Tramp, on November 9, 1951. Sylvester married Bernadette on June 2, 1942.

Sylvester died intestate on June 3, 1997. No probate proceedings were commenced at that time. Sylvester was survived by Bernadette and their eight children. The children are the plaintiffs in this litigation.

On June 25, 2003, Bernadette signed a document labeled "Waiver & Easement" concerning the quarter section of land at issue. This quarter section contained Bernadette's residence, of which she was the only occupant. The document was recorded with the County's register of deeds. Following the signature and recording of the easement, H & H Cattle's application for a confined feeding operation with 6,000 head of cattle was approved by the County.

On July 6, 2011, Bernadette filed an application for the informal appointment of a personal representative for Sylvester's estate and was appointed as personal representative. The sole asset of the estate was the quarter section of land at issue on appeal.

On July 12, 2011, Bernadette, as personal representative, signed a lease for two "wind towers" to be located on the quarter section. This lease was also recorded with the register of deeds. It appears from the record that these leases were the impetus behind probating Sylvester's estate.

The family reached an agreement regarding the distribution of Sylvester's estate. On July 13, 2011, an attorney for the estate sent Bernadette and her daughter Mardell a draft agreement providing that the quarter section be distributed to Bernadette for life, with the remainder interest divided among the eight children. Bernadette and the children eventually signed this agreement, and a copy was apparently sent to all parties. Approval of the agreement was sought and granted by the probate court on April 12, 2012.

On July 12, 2012, that agreement was recorded with the register of deeds. The deed of distribution specifically stated that the quarter section was deeded to Bernadette for life,

with the remainder to the children, "subject to easements and restrictions of record."

On December 12, 2017, the board of supervisors approved H & H Cattle's application for a conditional use permit to increase the number of cattle at its feedlot. The expansion to 6,000 head of cattle necessitated the impact easement, and the number of cattle at the feedlot increased to 7,500 head. The 2017 approval sought an increase to 20,000 head of cattle.

Bernadette and the children filed a challenge to this approval in district court. Bernadette subsequently died on August 9, 2018; her estate has not been probated. The district court reversed and vacated the board of supervisors' grant of the conditional use permit. The County and Epic both appeal.

ASSIGNMENTS OF ERROR

Although filing separate briefs, the County and Epic generally assign, restated, that the district court erred in (1) concluding that Bernadette lacked the authority to grant the easement; (2) determining that the children did not receive the property subject to easements and restrictions of record; (3) not applying the doctrine of estoppel by deed; (4) finding that the children lacked notice of the easement at issue and, accordingly, that the children did not ratify the easement; and (5) failing to take into account "the inequities of overturning the . . . County Board of Supervisor[s'] grant of the permit" and in not giving consideration to the board of supervisors' exercise of its discretion and the regularity of its official acts.

STANDARD OF REVIEW

[1] In appeals involving a conditional use permit or special exception under Neb. Rev. Stat. § 23-114.01(5) (Reissue 2012), the findings of the district court have the effect of a jury verdict and the court's judgment will not be set aside unless the court's factual findings are clearly erroneous or the court erred in its application of the law.[1]

---

[1] See *In re Application of Olmer*, 275 Neb. 852, 752 N.W.2d 124 (2008).

ANALYSIS

*Validity of Easement.*

The primary issue on appeal is whether the easement signed by Bernadette in favor of H & H Cattle was effective in binding Bernadette and the children.

[2] The quarter section in question was owned by Sylvester until his death in 1997. Sylvester died intestate. When a person dies, the title to his or her property immediately devolves in the heirs, subject to administration.[2] "'Where an ancestor dies intestate his lands descend instantly to his heirs. It does not require settlement of his estate or a probate order declaring heirship to vest his title.'"[3] In other words, "the right to possession of an intestate's property and the right to take through intestate succession accrue immediately on the death of the ancestor, subject only to the control of the court for purposes of administering the estate."[4]

In Nebraska, the fact that an estate is not probated, as was the case here, does not prevent an heir from taking under a will or under intestacy. Neb. Rev. Stat. § 30-2499 (Reissue 2016) provides: "In the absence of administration, the heirs and devisees are entitled to the estate in accordance with . . . the laws of intestate succession. . . . Persons entitled to property by . . . intestacy may establish title thereto by proof of the decedent's ownership, his death, and their relationship to the decedent."

At the time of Sylvester's death in 1997, the laws of intestate succession, specifically Neb. Rev. Stat. § 30-2302(3) (Reissue 2008), provided that Bernadette, as Sylvester's surviving spouse, was entitled to the first $50,000, plus one-half of the remaining estate, while under Neb. Rev. Stat.

---

[2] Neb. Rev. Stat. § 30-2401 (Reissue 2016). See, *Wilson v. Fieldgrove*, 280 Neb. 548, 787 N.W.2d 707 (2010); *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994).

[3] *Brtek v. Cihal, supra* note 2, 245 Neb. at 771, 515 N.W.2d at 638.

[4] 23 Am. Jur. 2d *Descent and Distribution* § 13 at 706 (2013).

§ 30-2303 (Reissue 2016), Sylvester's eight children were to divide the remainder.

[3,4] It was during this time that Bernadette signed the easement at issue. Any person with a possessory interest in land may create an easement burdening that person's interest; however, that easement cannot last beyond the interest held in the burdened property by the grantor of the easement.[5] And co-owners must act together to burden their land with an easement and other servitudes.[6] Since a grantor cannot establish an easement in an estate that the grantor does not own, the holder of an undivided interest, such as a tenant in common or a joint tenant, cannot create an easement that binds the shares of the other co-owners.[7]

Bernadette was not the sole owner of the quarter section, but instead co-owned the property with her children. For that reason, Bernadette was unable to execute an easement that bound the shares of her children. The district court did not err in so finding.

*Defenses—Overview.*

The appellants argue that even if Bernadette's easement did not bind the children, several affirmative defenses apply and the easement should nevertheless be enforceable. From a review of the record, various affirmative defenses were presented to either the lower court or this court. The children argue that none of these defenses were raised in any responsive pleading and thus have been waived.

We agree with the appellants that their defenses of estoppel by deed and ratification were raised and tried without objection to the district court[8] and, as such, have not been waived. We also address the more general contention that the

---

[5] Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land, § 3:4 (2020).

[6] *Id*.

[7] *Id.*

[8] Neb. Ct. R. Pldg. § 6-1115.

appellants relied upon Bernadette's easement. However, the defenses of caveat emptor and adverse possession were not raised below and we do not address them here.

*Estoppel by Deed.*

[5] We turn first to the contention that the children are estopped from contending that the easement was invalid. Estoppel by deed is a defensive bar which "precludes one party to a deed and his or her privies from asserting as against another party and his or her privies any right or title in derogation of the deed or from denying the truth of any material facts asserted in it."[9]

Generally the doctrine operates by estopping a grantor "who conveys by warranty deed an interest that he or she does not then own, but later acquires," from "denying the validity of the first deed."[10] This doctrine reasons that an "uninformed grantee should not be penalized if the grantor did not own the property at the time of the conveyance yet subsequently acquired it."[11] "Implicit in [this doctrine] is a recognition of the possibility that the grantor may never acquire sole title to the property and that the grantee, therefore, may never benefit from an estoppel."[12]

At the trial level, and in their briefs on appeal, the appellants argued that the deed of distribution was the operative deed for purposes of the doctrine of estoppel by deed. The appellants argued that by both its language and its status as a personal representative's deed, that deed gave the children their remainder interest in the land "subject to easements and restrictions of record," which included the easement Bernadette

---

[9] 28 Am. Jur. 2d *Estoppel and Waiver* § 5 at 469 (2011). Cf., *Stratton v. McDermott*, 89 Neb. 622, 131 N.W. 949 (1911); *Omaha Bridge & Terminal R. Co. v. Whitney*, 68 Neb. 389, 99 N.W. 525 (1903); *Holt County v. Scott*, 53 Neb. 176, 73 N.W. 681 (1897).

[10] 28 Am. Jur. 2d, *supra* note 9 at 469-70.

[11] 23 Am. Jur. 2d *Deeds* § 278 at 277 (2013).

[12] *Ianotti v. Ciccio*, 219 Conn. 36, 47, 591 A.2d 797, 802 (1991).

signed in favor of H & H Cattle. It was only in its reply brief that Epic raised as the operative deed the easement between Bernadette and its predecessor, H & H Cattle.

As an initial matter, we conclude that the appellants are not entitled to utilize the defense of estoppel by deed as to the deed of distribution. Generally, "[s]trangers to the deed are neither bound by, nor entitled to invoke, . . . estoppel [by deed]."[13] While Bernadette, individually and as personal representative, and the children and their privies, as parties to that deed, are eligible to utilize this defense, the appellants, as strangers, are not.

As for the easement, Bernadette and H & H Cattle were parties to the easement and their privies now hold those interests. Accordingly, Epic, as H & H Cattle's successor, is not a stranger for purposes of estoppel by deed. But the defense is still without application, because Bernadette never held sole title to the quarter section of property.

Upon Sylvester's death, Bernadette owned just over one-half of the quarter section at issue. Later, following the family agreement, Bernadette owned a life estate in that quarter section. As we concluded above, at no point did Bernadette own an interest sufficient to grant an easement that would bind her children. As a general proposition, "title cannot be created or acquired by estoppel."[14] Where Bernadette did not own such an interest, she could not grant such an interest to H & H Cattle.

For these reasons, the appellants' arguments regarding estoppel by deed are without merit.

*Ratification.*

We turn next to the assertion that the children failed to take issue with Bernadette's grant of the easement, which was recorded with the register of deeds, and later accepted the

---

[13] 31 C.J.S. *Estoppel and Waiver* § 62 at 405 (2019).

[14] *Id.*, § 9 at 352.

personal representative's deed. As such, they effectively consented to, or ratified, the easement.

*Ianotti v. Ciccio*[15] is instructive. There, the court noted that the cotenant

> never ratified the quitclaim deed by which her husband purported to grant an easement to the defendant. She neither signed the deed, nor executed and delivered her own deed. Significantly, although the trial court made no such express factual finding, [the cotenant] testified that she had been unaware of the existence of the quitclaim deed until it had been brought to her attention by a prospective purchaser of the plaintiffs' property. The trial court's express finding that the defendant had acquired none of [the cotenant's] interest in the plaintiffs' property is inconsistent with any claim of ratification.[16]

[6] We find instructive, though we do not expressly adopt, the Restatement (Third) of Agency. According to the Restatement, ratification is the "affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."[17] "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents."[18]

"A person is not bound by a ratification made without knowledge of material facts involved in the original act when the person was unaware of such lack of knowledge."[19] Notice in this context means actual notice, and not notice as otherwise set forth in the Restatement.[20]

---

[15] *Ianotti v. Ciccio, supra* note 12.

[16] *Id.* at 44, 591 A.2d at 801.

[17] 1 Restatement (Third) of Agency, § 4.01(1) at 304 (2006).

[18] *Id.*, § 4.01(2).

[19] *Id.*, § 4.06 at 336.

[20] *Id.*, § 1.04(4) at 70 ("[a] person has notice of a fact if the person knows the fact, has reason to know the fact, has received an effective notification of the fact, or should know the fact to fulfill a duty owed to another person").

The parties have stipulated that the easement was filed with the register of deeds, but the record does not show that the children were actually aware of its existence. Though some of the children recall seeing or hearing about the owner of H & H Cattle visiting Bernadette around the time the easement was signed, the record does not show that the children were informed of the nature of the visit. Neither does the record show that the children were informed that Bernadette later signed the easement H & H Cattle sought. While the record indicates that one of Bernadette's daughters might have been aware of the signing of the easement, as we have held above with respect to Bernadette, that knowledge is not binding on her siblings.

We review the district court's findings for clear error and find none. Given the record as outlined above, the district court's finding that the children were unaware that the easement had been signed was not clearly erroneous. Hence, they could not have ratified the signature and, in turn, the easement. The appellants' argument regarding ratification is without merit.

*Reliance by and Deference to*
*Board of Supervisors.*

Finally, Epic argues that the board of supervisors reasonably relied on the easement in granting the earlier feedlot permits, and at this late date, the children should not be found to object. Relatedly, the County argues that this court defers to and gives discretion to the official acts of county officials.

That Bernadette was not record owner of the quarter section was information available to the appellants by a record search. Indeed, it is apparent from the record that the company that sought to lease the property for placement of "wind towers" was able to determine that Bernadette was not record owner. Instead, the County and the board of supervisors acted in accordance with representations made by Epic's predecessor without independently determining whether they were

valid. On these facts, any reliance on the easement was not reasonable.

To the extent that generally this court gives deference to the acts of a public official, this deference and discretion is not unlimited. In this instance, Bernadette had no authority under the law to bind the children to the easement. The County cannot correct this failure through an official act of its board of supervisors.

There is no merit to these assertions or to the appellants' appeal.

## CONCLUSION

The order of the district court is affirmed.

AFFIRMED.