PATRICK A. TREGLIA *v.* ROBERT G. ZANESKY ET AL.
(AC 19829)

Mihalakos, Dranginis and Peters, Js.

Argued September 21—officially released December 25, 2001

*Ridgely W. Brown*, for the appellant (plaintiff).

*Joseph F. Mulvey*, for the appellee (defendant Michael Treglia).

*Gerald L. Garlick*, for the appellee (defendant Norwalk Savings Society et al.).

*Peter V. Lathouris*, with whom, on the brief, was *Lucas J. Thomas*, for the appellee (defendant Pontos Realty, Inc.).

*Eric J. Stockman,* for the appellee (defendant Alfred Kery).

*Opinion*

PETERS, J. General Statutes § 47-5[1] sets out formal requirements for conveyances of real property. Under that statute, if a grantor does not subscribe to a deed "with his own hand," his name may be affixed by a person with a power of attorney. The principal issue in this case is whether this statutory directive may be waived by a grantor who has designated a surrogate signer by a specific grant of authority that is not in the form of a power of attorney. This is an issue of first impression. The trial court, concluding that use of a power of attorney was not always mandatory, rendered judgment denying the grantor's claim that the absence of a power of attorney entitled him to set aside a conveyance under the circumstances of this case. We agree.

On February 3, 1993, the plaintiff, Patrick A. Treglia, brought an action to quiet title and for compensatory and punitive damages against his former attorney, Robert G. Zanesky; his brother, Michael Treglia (brother); and subsequent titleholders to the property at issue.[2] The defendants filed answers, special defenses and counterclaims. In addition, some of the defendants filed cross claims against each other.

---

[1] General Statutes § 47-5 (a) provides in relevant part: "All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or *by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances* . . . (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed . . . ." (Emphasis added.)

[2] The defendants named in the complaint were attorney Robert G. Zanesky, Barbara Zanesky, Michael Treglia, Alfred Kery, Pontos Realty, Inc., Norwalk Savings Society and the redevelopment agency of the city of Norwalk. The merits of the plaintiff's claims against his attorney are not before us in this appeal.

The plaintiff's complaint included a claim that some-one other than the plaintiff had signed the plaintiff's name to the contract and warranty deed and that his brother had wrongfully kept proceeds from the sale. The court refused to charge the jury on forgery and refused to propound an interrogatory on that issue.

Prior to trial, the defendant Norwalk Savings Society filed a motion seeking to preclude the risk of double recovery by requiring the plaintiff to make an election of remedies between his claim for monetary damages and his claimed right to a decree that would quiet title. The court denied this motion before the presentation of the evidence, but subsequently required such an election after all the evidence had been presented. Over protest, the plaintiff elected to pursue his quiet title claim.

The jury returned its verdict in favor of all the defendants in accordance with its answers to a set of interrogatories. The court accepted the verdict of the jury and rendered judgment in favor of the defendants.

The plaintiff has appealed from the judgment against him. In particular, he maintains that the court improperly denied his motions for directed verdict and to set aside the verdict.

## FACTUAL HISTORY

The jury's answers to the interrogatories and the record as a whole reveal the following facts.[3] From 1979

---

[3] The interrogatories to which the jury responded were in relevant part as follows:

"1. Do you find that the plaintiff has proven by a preponderance of the evidence that when the property was purchased in 1979, he accepted the deed to the property, or that someone accepted it on his behalf, or that by his acts or conduct, the plaintiff showed an intention to assent, or consent, to the 1979 deed? [Jury responded in the affirmative.] . . .

"2. Do you find that the defendant Michael Treglia has proven by a preponderance of the evidence that the plaintiff knew or learned of the 1986 sale of the property prior to February 6, 1990? [Jury responded in the negative.] . . .

"3. Do you find that the defendants have proven by a preponderance of

to 1986, the plaintiff, his brother and their father, Frank Treglia (father), jointly owned a tract of property

the evidence that Patrick Treglia gave permission to or granted authority to his father to sign his name on the deed of conveyance? [Jury responded in the affirmative.]

"4. Do you find that the plaintiff has proven by a preponderance of the evidence that Michael Treglia converted the property of the plaintiff by assuming authority over and dealing with the net proceeds of the sale in a manner adverse to and inconsistent with the rights of the plaintiff, Patrick Treglia? [Jury responded in the negative.] . . .

"5. Do you find that the defendant, Michael Treglia, has proven by a preponderance of the evidence, that before, during and after the sale of the property in 1986 the plaintiff conducted himself with respect to the property in a way intended or calculated to induce Michael Treglia into believing that Patrick Treglia no longer had or wanted an interest in the property? [Jury responded in the negative.]

"6. If the answer to question 5 is 'Yes' . . . [Jury did not respond.]

"7. Do you find that the plaintiff has proven by a preponderance of the evidence that he is entitled to punitive damages from the defendant Michael Treglia? [Jury responded in the negative.]

"8. If you answered 'Yes' to question 7 . . . [Jury did not respond.]

"9. Do you find that the defendants Pontos Realty, Inc., Alfred Kery, Norwalk Savings Society and Redevelopment Agency of the city of Norwalk ('The Purchasing Defendants') have proven by a preponderance of the evidence that before, during and/or after the sale of the property in 1986, the plaintiff conducted himself with respect to the property in a way intended or calculated to induce defendants to believe they were receiving or had received good title to the property? [Jury responded in the affirmative.]

"10. If the answer to question 9 is 'Yes,' have the Purchasing Defendants proven by a preponderance of the evidence that any or all of them in good faith reliance on the plaintiff's conduct changed their positions or did some act to their detriment which otherwise they would not have done? [Jury responded in the affirmative.] If the answer to this question is 'YES,' specify which defendants acted to their detriment (check all that apply.) [Jury checked all purchasing defendants.]

"11. Do you find that the Purchasing Defendants have proven by a preponderance of the evidence that the plaintiff waited an unreasonable or inexcusable amount of time between the time that he first learned the property was to be sold or had been sold and the time that he first made a claim of ownership to the property? [Jury responded in the affirmative.]

"12. If the answer to question 11 is 'YES,' have the Purchasing Defendants proven by a preponderance of the evidence that any or all of them were prejudiced by the plaintiff's delay? [Jury answered in the affirmative.] If the answer to this question is 'YES,' specify which defendants were prejudiced by the plaintiff's delay (check all that apply). [Jury checked all purchasing defendants.] . . ."

located in Norwalk. During that time period, all three owners had participated in making repairs to the property and in collecting rent from tenants. The plaintiff, however, had left all business transactions to his father and his brother.

In February, 1986, the plaintiff's father and brother contracted to sell the Norwalk property to the defendant Pontos Realty, Inc. (Pontos). The contract of sale, duly recorded, contained the signatures of the father and the brother, as well as the purported signature of the plaintiff. Although concededly the plaintiff did not sign his own name on the contract, the jury made no finding as to who had done so.[4] The contract set the purchase price at $100,000 to be paid by a promissory note in that amount payable to the plaintiff's brother.

In accordance with the contract of sale, the property was conveyed to Pontos by a warranty deed that purported to bear the signatures of all three owners. The plaintiff was not present at the closing and, therefore, did not sign his own name. The father signed the plaintiff's name to the deed, in accordance with the grant of authority given to him by the plaintiff to affix the plaintiff's signature.

The Pontos note was secured by two mortgages, duly recorded, to the defendants Norwalk Savings Society and the redevelopment agency of the city of Norwalk. In December, 1990, the defendant Alfred Kery obtained title to a portion of the property from Pontos.

Although the plaintiff knew in 1986 that the property was on the market to be sold, he did not discover the

---

[4] The absence of a finding regarding who actually affixed the plaintiff's signature to the contract does not affect our decision. The operative issue is the deed, which supersedes the contract. See *Powers* v. *Olson*, 252 Conn. 98, 106, 742 A.2d 799 (2000).

facts of the sale to Pontos until 1990.[5] Nonetheless, the jury found that he had conducted himself in a way "intended or calculated to induce" the purchasing defendants[6] to believe that "they were receiving or had received good title to the property." The jury further found that the plaintiff had waited too long to raise his claim of ownership and that the purchasing defendants had been prejudiced by the plaintiff's delay.

On appeal from the judgment of the trial court, the plaintiff does not claim that the factual findings of the jury were clearly erroneous. He does, however, raise three issues of law in which he claims that the court improperly (1) refused to enforce the statutory requirement that a representative signing the name of a grantor must have a valid power of attorney, (2) required the plaintiff to elect remedies prior to submission of the case to the jury, and (3) refused to charge the jury on forgery and on related compensatory damages. The plaintiff also raises three issues in which he claims that the trial court abused its discretion by denying (1) the plaintiff's motion for directed verdict on the special defenses of laches and estoppel, (2) the plaintiff's motion to set aside the verdict on the ground of inconsistent answers to interrogatories, and (3) the plaintiffs' motions for directed verdict and to set aside the verdict as to his brother.

I

## COMPLIANCE WITH GENERAL STATUTES § 47-5

The plaintiff challenges the propriety of a judgment that validates a conveyance despite noncompliance

---

[5] For the purpose of determining whether the complaint was filed within the statute of limitations, the jury found that the plaintiff discovered the sale no earlier than February 6, 1990. The plaintiff asserts that he did not discover the sale of the property until the fall of 1990.

[6] The purchasing defendants included all the defendants with the exception of the plaintiff's brother.

with the statutory formalities for conveyance, specifically those relating to the power of attorney, set out in § 47-5 (a).[7] The plaintiff argues that this statutory provision is a mandatory condition that must be met to effectuate a valid conveyance and, accordingly, that noncompliance with the formal procedure renders a conveyance null and void. We disagree.

To determine whether the trial court improperly sanctioned a departure from the statute, we engage in plenary review because this is a question of law.[8] See *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 840, 779 A.2d 174 (2001). The issue is whether a deed of conveyance may be validly signed by a grantor's representative who is someone other than an attorney "authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances . . . ." General Statutes § 47-5 (a).[9] The plaintiff argues that, without a power of attorney, a conveyance is void and therefore can be set aside at any time.

Connecticut cases have held that a conveyance of property rights is not automatically nullified by lack of adherence to certain formalities. While earlier common law required strict observance of formalities associated with the conveyance of property rights, "[s]ubsequent decisions . . . have sufficiently modified the common law rule so as to put into question whether a different result . . . is required . . . . Under the modified rule, a deed manifesting one cotenant's attempted transfer of an interest is *voidable, not void.* Consequently, such a deed is susceptible of ratification. The deed can also

---

[7] See footnote 1.

[8] The plaintiff frames this argument in terms of a challenge to the interrogatories submitted to the jury. This is a question of law, however, and therefore cannot be resolved by challenging interrogatories which relate necessarily only to fact-finding.

[9] See footnote 1.

operate as an estoppel against the grantor." (Emphasis added.) *Ianotti* v. *Ciccio*, 219 Conn. 36, 44, 591 A.2d 797 (1991); see also *Pastine* v. *Altman*, 93 Conn. 707, 713, 107 A. 803 (1919); *Hartford & Salisbury Ore Co.* v. *Miller*, 41 Conn. 112 (1874). In *Ianotti*, our Supreme Court recognized that one cotenant's attempt to convey an interest in a portion of property did not render the conveyance void. *Ianotti* v. *Ciccio*, supra, 44. Rather, under some circumstances, the conveyance may be set aside as voidable if the power to set aside has been effectively exercised. Id.

Similarly, in this case, we conclude that lack of adherence to the statutory formalities set out in § 47-5 (a) rendered the 1986 deed of conveyance voidable, but not void. We do not intend to give a carte blanche approval to any deviation from the statute. The jury here found, however, that the plaintiff "gave permission to or granted authority to his father to sign his name on the 1986 deed of conveyance."[10] We find it significant that the jury's finding focused on authority to sign the plaintiff's name specifically on the 1986 deed of conveyance. This finding is particularly relevant to laying a factual foundation for the purchasing defendants' special defenses of laches and estoppel. It also establishes, however, the specific authority given to the father.

We cannot create a bright line test to distinguish permissible deviations from the statute from those that are impermissible. We conclude, therefore, that under the special circumstances of this case, the plaintiff's statutory claim is not persuasive.

## II

### ELECTION OF REMEDIES

The plaintiff claims that the trial court improperly required him to make an election of remedies prior to

---

[10] See footnote 3.

the court's submission of the case to the jury.[11] This is a question of law and therefore merits plenary review. See *Faught* v. *Edgewood*, 63 Conn. App. 164, 172, 772 A.2d 1142, cert. denied, 256 Conn. 934, 776 A.2d 1150 (2001). We again disagree with the plaintiff.

The plaintiff argues that he may seek both monetary compensation and quiet title in separate causes of action against different defendants. The plaintiff, however, mistakes a party's right to plead alternate theories of liability with a right to seek inconsistent remedies that could result in double recovery.

In support of his position, the plaintiff relies on cases in which an election of remedies was not required *prior* to the commencement of trial and on cases allowing claims inconsistent with claims raised in previous attempts to recover a nonexistent remedy. See, e.g., *Friederichsen* v. *Renard*, 247 U.S. 207, 38 S. Ct. 450, 62 L. Ed. 1075 (1918); *National Transportation Co.* v. *Toquet*, 123 Conn. 468, 196 A. 344 (1937); *Abbadessa* v. *Puglisi*, 101 Conn. 1, 124 A. 838 (1924). The issue of pretrial election of remedies is not before us in this case. It was only after all evidence had been presented that the plaintiff was required to make his election. Furthermore, the plaintiff was not precluded from attempting to recover on a claim that was inconsistent with a prior attempt to recover a nonexistent remedy.

The plaintiff also invokes cases holding that a litigant is entitled to proceed on inconsistent theories of recovery. See, e.g., *DeLucia* v. *Burns*, 11 Conn. App. 439, 446–47, 527 A.2d 1234, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987); *DeVita* v. *Esposito*, 13 Conn. App. 101, 105–106, 535 A.2d 364 (1987), cert. denied, 207 Conn. 807, 540 A.2d 375 (1988). While a trial court has a duty

[11] It appears from the record that the trial court acted sua sponte in requiring the plaintiff to make an election of remedies at the charge conference after all evidence had been heard.

to determine which of conflicting sets of facts a party has proved; see *DeVita* v. *Esposito*, supra, 107; that duty is relevant only to a party pleading alternate theories of liability. In this case, the plaintiff did not present inconsistent sets of facts in support of alternate theories of liability, among which the fact finder might choose in order to determine which had been proven. Rather, we agree with the defendants that the multiple remedies requested by the plaintiff could have resulted in double recovery. The plaintiff has provided us with no authority, and we know of none, that supports his contention that an election of remedies at the close of a jury trial is improper under the circumstances of this case.

## III

### FORGERY AND COMPENSATORY DAMAGES

The plaintiff next claims that the trial court improperly refused to charge the jury on forgery and compensatory damages relating to conversion. We disagree.

The plaintiff asserts that the jury should have been charged on forgery because the jury's finding on conversion and on damages was inextricably linked with its finding on forgery. The plaintiff further asserts that, pursuant to General Statutes § 52-565, the jury should have been charged on double damages related to forgery.[12] The plaintiff has failed to demonstrate, however, that claims of forgery and of related damages were preserved at trial.

"A fundamental tenet in our law is that the plaintiff's complaint defines the dimensions of the issues to be litigated. [T]he right of a plaintiff to recover is limited

---

[12] General Statutes § 52-565 provides: "Any person who falsely makes, alters, forges or counterfeits any document, or knowingly utters, as true, any document falsely made, altered, forged or counterfeited, shall pay double damages to any party injured thereby."

to the allegations of [her] complaint. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A plaintiff may not allege one cause of action and recover upon another." (Citations omitted; internal quotation marks omitted.) *Pergament* v. *Green*, 32 Conn. App. 644, 650, 630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993); see also *Aksomitas* v. *Aksomitas*, 205 Conn. 93, 102, 529 A.2d 1314 (1987).

In this case, the plaintiff's complaint contained no reference to forgery or to double damages related thereto. The complaint alleged only that "a person other than the plaintiff signed the plaintiff's name to said contract and warranty deed without the knowledge, consent, authority or ratification of the plaintiff." The plaintiff has made no showing that this pleading raises questions of forgery or double damages. His claim, therefore, is unsustainable on appeal.

## IV

## SPECIAL DEFENSES OF LACHES AND ESTOPPEL

The plaintiff claims that the trial court improperly denied his motion for a directed verdict with respect to the purchasing defendants' special defenses of laches and estoppel. In support of his claim, the plaintiff maintains that the jury verdict was unreasonable in light of the defendants' failure to prove their interest and to plead facts sufficient to support the special defenses. We disagree.

We first articulate the standard by which we review a trial court's denial of a motion for directed verdict. "Directed verdicts are not favored. . . . Our review of a trial court's refusal to direct a verdict . . . takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favor-

able to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Citations omitted; internal quotation marks omitted.) *John T. Brady & Co.* v. *Stamford,* 220 Conn. 432, 440–41, 599 A.2d 370 (1991).

The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant. "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a party has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." (Citation omitted; internal quotation marks omitted.) *Farmers & Mechanics Savings Bank* v. *Sullivan,* 216 Conn. 341, 350, 579 A.2d 1054 (1990).

The defense of estoppel must be supported by proof of two essential elements: "(1) the party against whom estoppel is claimed must be shown to have done or said something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must be shown to have changed its position in reliance on those facts, thereby incurring some injury. . . . An estoppel is predicated on proof of misleading conduct resulting in prejudice to the other party. . . . The party claiming estoppel has the burden of proof, and whether it has met that burden of proof in a particular case is an issue of fact." (Citations omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership,* 236 Conn. 750, 768, 674 A.2d 1313 (1996).

In this case, the purchasing defendants presented to the jury sufficient evidence to establish the necessary elements of the defenses of laches and estoppel. Both of these special defenses involved fact specific inquiries into the conduct of the plaintiff and the reliance of these defendants on that conduct. The plaintiff has not challenged the facts found by the jury. A fortiori, the jury's verdict is not unreasonable as a matter of law. The trial court properly denied the plaintiff's motion for a directed verdict.

V

INCONSISTENT INTERROGATORIES

The plaintiff also claims that the trial court improperly denied the plaintiff's motion to set aside the verdict because certain responses to the jury's interrogatories were inconsistent. We disagree.

We review the trial court's denial of a motion to set aside a verdict by an abuse of discretion standard. *Connecticut National Bank* v. *D'Onofrio*, 46 Conn. App. 199, 214–15, 699 A.2d 237, cert. denied, 243 Conn. 926, 701 A.2d 657 (1997). "The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to such interrogatories is extremely limited." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 269, 698 A.2d 838 (1997).

The standard for a trial court to review a jury's responses to interrogatories also is particularly narrow. The role of the court is not "to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences." *Norrie* v. *Heil Co.*, 203 Conn. 594, 606, 525 A.2d 1332 (1987). Rather, "[w]hen a claim is made that the jury's answers to interrogatories

in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." Id. "To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as *conclusively* to show that as [a] matter of law judgment could only be rendered for the party against whom the general verdict was found; they must negative every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial." (Emphasis added; internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 269–70.

The plaintiff first asserts that he is entitled to a new trial because the jury's responses to the interrogatories related to the special defenses of laches and estoppel were inconsistent with the jury's finding relating to the plaintiff's knowledge of the 1986 sale. He asks how he could have been estopped by an event about which he did not know. The answer to his question is that the interrogatory answers were more encompassing than he represents them to be. The jury found in its answer to interrogatory number eleven that "the plaintiff waited an unreasonable or inexcusable amount of time between the time that *he first learned the property was to be sold* or had been sold and the time that he first made a claim of ownership to the property" (emphasis added) and, in its answer to interrogatory number twelve that the purchasing defendants had been prejudiced by that delay.[13] Interrogatory number eleven refers to the time when the plaintiff first learned that the property was *to be sold*. Even though the plaintiff

---

[13] See footnote 3.

had no knowledge of the *actual sale* prior to 1990, the jury finding in interrogatory number three stated that the plaintiff had given his father authority to sign his name on the 1986 warranty deed. Taken together, these answers support a finding that the plaintiff had knowledge in 1986 that the property was to be sold.[14] So interpreted, there is no inconsistency between the jury's responses to the interrogatories related to laches and estoppel, on the one hand, and to lack of actual knowledge until 1990 on the other.

The plaintiff also claims that it was inconsistent for the jury to respond negatively to interrogatories number two and five and affirmatively to interrogatory number nine.[15] The jury found in response to interrogatory number two that the plaintiff had no actual knowledge of the sale prior to February of 1990. Interrogatories number five and nine asked the jury to find whether the plaintiff had conducted himself in a manner intended or calculated to induce certain beliefs in the defendants. In response, the jury found that the plaintiff's conduct intentionally induced the purchasing defendants to believe that they were receiving or had received good title, but did not intentionally induce his brother to believe that he was no longer interested in the property.

These answers to the interrogatories are not necessarily inconsistent because they can be harmonized so as to sustain the jury's verdict. See *Norrie* v. *Heil Co.*, supra, 203 Conn. 606. The jury's findings relating to the plaintiff's conduct did not specify any particular time period. Rather, they referred to a period "before, during and/or after the sale of the property in 1986." The jury's

---

[14] Notably, the interrogatories did not ask and the jury did not find whether the plaintiff had notice of the sale due to his knowledge in 1986 that the property was to be sold and his granting of authority to his father to convey the property at that time. The interrogatories asked the jury only about actual knowledge of the sale.

[15] See footnote 3.

finding that the plaintiff had given authority to his father
to sign the plaintiff's name on the 1986 warranty deed
implies that the plaintiff knew that the property was to
be sold at that time. Therefore, the jury's findings relat-
ing to the plaintiff's conduct do not necessarily conflict
with the jury's finding relating to when the plaintiff
discovered the *actual sale*. Moreover, the jury found in
interrogatory number eleven that the plaintiff waited
an unreasonable amount of time to claim ownership of
the property after learning that the property was to be
sold or had been sold. In light of the plaintiff's knowl-
edge in 1986 that the property was to be sold, his grant
of authority to his father to convey the property and his
failure to claim ownership earlier, the jury reasonably
could have considered his delay to be an intentional
inducement of certain beliefs in the purchasing defen-
dants. Finally, the jury's responses to interrogatories
number five and nine are not inconsistent with one
another because they pertain to the plaintiff's conduct
with respect to different defendants.

We conclude that the answers to the interrogatories
are not irreconcilable. Accordingly, we affirm the trial
court's denial of the motion to set aside the verdict on
those grounds.

## VI

## CONVERSION

The plaintiff's final claim challenges the trial court's
denial of his motions for directed verdict and to set
aside the verdict against his brother, Michael Treglia.
The plaintiff maintains that no reasonable jury could
have failed to find the brother liable for falsely signing
the plaintiff's name on the contract of sale and for
converting the sale proceeds. This claim is frivolous.

In its response to the interrogatories, the jury found
that the plaintiff had not proven that his brother had

"converted the property of the plaintiff by assuming authority over and dealing with the net proceeds of the sale in a manner adverse to and inconsistent with the rights of the plaintiff. . . ."[16] The plaintiff claims that this finding cannot be sustained because there was undisputed evidence that the brother signed the plaintiff's name. That is not so. The evidence was not undisputed and therefore the issue was appropriately a question for the jury.

The judgment is affirmed.

In this opinion the other judges concurred.