[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried to the court on May 15, 2002. The plaintiff failed to appear at trial and was nonsuited. After considering the evidence and the counterclaims, the court issues this decision.
 I. PROCEDURAL BACKGROUND
The plaintiff, the Ivoryton Store (Ivoryton), commenced this action by a one count complaint, dated February 16, 2000. The complaint alleges that Ivoryton supplied meat and poultry on account to the defendant (Kimberly's), resulting in an unpaid balance due of $7,021.09.
On May 19, 2000, the court entered a default against Kimberly's for failure to appear (#101). The matter was then claimed to the hearings in damages trial list (#102). Ivoryton presented an affidavit of debt, dated September 19, 2000, of Clifford G. Ward, Ivoryton's owner (#103). On September 20, 2000, the court entered judgment against Kimberly's in the amount of $3,052.45, plus costs of $226.85, for a total of $3,279.30.
On May 4, 2001, Ivoryton filed a notice of judgment (#105), which contained a certification which stated that a copy thereof had been mailed to Kimberly's. On May 11, 2001, in response to Ivoryton's application, dated May 9, 2001, the court issued a bank execution in the CT Page 8389 amount of $3,279.30, authorizing execution on Kimberly's bank account (##106 and 106.50).
Thereafter, Kimberly's made its first filing in this action. In response to Kimberly's motion, in which it stated that it had a valid defense to Ivoryton's claim, filed on June 12, 2001, the court reopened the matter and vacated the judgment (#107).
On September 5, 2001, Kimberly's filed its answer, special defense, and two count counterclaim (#111). In the special defense, it alleges payment and accord and satisfaction.
In the first count of the counterclaim, Kimberly's alleges that, after this action was commenced, beginning in June, 2000, it made installment payments to Ivoryton which were accepted, through September 9, 2000. It claims that, notwithstanding this, Ivoryton continued the action for the full amount claimed and, without notice, obtained a default judgment. In paragraph 5, Kimberly's alleges that Ivoryton "further proceeded to execute on an illegal judgment when said debt had been fully paid by the defendant." As a result, Kimberly's claims that Ivoryton is liable for abuse of process.
The allegations of the first count are incorporated by reference in the second count of the counterclaim. There, Kimberly's alleges that Ivoryton has engaged in an illegal and unfair trade practice, in violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). Kimberly's seeks damages and punitive damages, including attorney's fees.
In response, by reply and answer, filed on December 10, 2001 (#117.50) Ivoryton denied the special defense and the salient allegations of the counterclaim. On April 1, 2002, the court issued a notice scheduling the matter for trial on May 15, 2002.
 II. FACTS
The court finds the following facts and credits the following evidence.[1] Kimberly Snow, Kimberly's president, testified concerning the history of payments made on the account which Kimberly's had with Ivoryton. Kimberly's stopped purchasing products from Ivoryton as of December 31, 1997. Exhibit A, a year end balance sheet sent by Ivoryton to Kimberly's, shows a total due to Ivoryton, as of January 1, 1998, of $8,186.97. In 1998 and 1999, Kimberly's paid a total of $3,436.66 to Ivoryton to reduce the outstanding balance to $4,750.31. (See Exhibits B and C, records of payments.) CT Page 8390
In February, 2000, Snow was served, on behalf of Kimberly's, with the complaint in this action. She then communicated with the plaintiffs attorney and, in April, 2000, sent to him a summary of what she believed to be the outstanding invoices, for a total then due of $4,331.84. She proposed to pay the balance by making five weekly installment payments of $866.37 each. (See Exhibit D.) Ivoryton's counsel never responded to her proposal. She also spoke to Ivoryton's owner to communicate her offer. She sent him a letter, dated July 27, 2000, by certified mail, return receipt requested, in which she reiterated her offer and with which she enclosed the first payment. In the letter she asked Ivoryton to fax to her any additional invoices which Ivoryton claimed to be unpaid and promised to respond within a week. (See Exhibit E.) She received no response from Ivoryton. Snow testified that she received the green card reflecting that Ivoryton had received her letter. Ivoryton deposited her check. (See Exhibit F.)
Thereafter, she sent four additional checks to Ivoryton in order to retire the debt, the last dated September 9, 2000. (See Exhibit F.) Each of these checks was deposited and cleared. In Ivoryton's affidavit of debt, dated September 19, 2000, which was filed with the court (#103), it claimed that the then-existing debt amounted to $3,038.45, plus a bad check charge of $14.00, for a total of $3,052.45. Kimberly's last check, for $866.37, was credited after the date of the affidavit (the reverse side of check no. 2463, dated September 9, 2000, shows a processing date of September 22, 2000). The affidavit of debt was not a correct statement of the status of the account when it was filed.
On June 6, 2001, even though the debt had been retired since September, 2000, Ivoryton served the execution on the bank in which Kimberly's maintained an account: The May 9, 2001 application for the execution incorrectly stated "[n]one" in the space for "Amount of Damages And Costs Already Paid (if any)." The sum of $3,855.73 was involuntarily withdrawn as a result. (See Exhibit G.) As noted, the court subsequently vacated the judgment.
 III. DISCUSSION A. Abuse of Process
"Abuse of process is the misuse of process regularly issued to accomplish an unlawful ulterior purpose. The gravamen of the complaint is the use of process for a purpose not justified by law. The distinction between malicious prosecution or vexatious suit and abuse of process as tort actions is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process but in its abuse." CT Page 8391 (Internal quotation marks omitted.) QSP, Inc. v. The Aetna Casualty Surety Co., 256 Conn. 343, 360 n. 16, 773 A.2d 906 (2001).
"[T]he gravamen of the action for abuse of process is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed. . . . [T]he addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." (Emphasis in original; internal quotation marks omitted; citation omitted.) Suffield DevelopmentAssociates Limited Partnership v. National Loan Investors, L.P.,260 Conn. 766, 772-773, ___ A.2d ___ (2002).
"A party does not abuse legal process merely by filing a lawsuit. To allege a viable cause of action for abuse of process, a claimant must point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." (Internal quotation marks omitted.) Norse Systems, Inc. v. Tingley Systems, Inc.,49 Conn. App. 582, 601, 715 A.2d 807 (1998). To succeed on an abuse of process claim, a plaintiff need not establish that the proceeding was begun without probable cause or that it terminated in her favor. See,Lewis Truck Trailer, Inc. v. Jandreau, 11 Conn. App. 168, 170-171,526 A.2d 532 (1987).
Suffield Development Associates Limited Partnership v. National LoanInvestors, L.P., supra, also involved a bank execution. There, our Supreme Court noted that because the gravamen of an abuse of process action is the use of legal process primarily to accomplish a purpose for which it is not designed, "we must first examine the purpose for which the process at issue in this case, namely an execution against debts due from a bank, is designed." Id., 260 Conn. 773. "Essentially, the purpose of an execution is to provide a means for a party to recover under a judgment for money damages, the liability for, and amount of which, has been specifically determined by a court." Id., 774.
In Suffield, the plaintiff alleged that the defendants wrongfully applied for the execution to pressure the plaintiff into paying a disputed amount claimed to be due pursuant to a stipulated judgment and "misrepresented their right as a matter of law to, and inflated the amount of, the execution. The plaintiff alleged, therefore, that the defendants used the process of an execution to pressure the plaintiff into paying money to National and to recover monies that the plaintiff did not owe under the stipulated judgment." Id., 774.
The Supreme Court concluded that the plaintiffs allegations supported a claim for abuse of process "because it alleged that the defendants had CT Page 8392 misrepresented the amount to which National was entitled as a matter of law under the stipulated judgment, inflated the amount owed, and thereby obtained an excessive execution all for the purpose of coercing the plaintiff into making payment to National." Id., 775. The court noted also that "[t]he plaintiff alleged that the defendants used the execution to pressure the plaintiff in an extortionate manner and to recover money the amount of which was still in dispute. Obtaining an execution is not a mechanism designed to pressure a party into settlement in other litigation, to determine how much money one party owes another, or to secure money pending the outcome of litigation. To use it for any of those purposes potentially constitutes an abuse of process." Id., 776. The court reiterated that "an improper purpose" must be alleged. Id. Thus "a specific instance of misconduct" must be accompanied "with an ulterior motive." Id., 777.
Here, in contrast to the allegations in Suffield, no improper purpose has been alleged or proved. Instead, what has been shown is that Ivoryton continued the action and executed on Kimberly's bank account, enabling it to collect monies after the debt had been paid. For example, no allegation or proof of extortion has been presented in order to demonstrate an improper purpose. See General Statutes § 53a-119
(defining extortion as a means of obtaining property through instilling fear).
After the evidence was presented, Kimberly's argued that Ivoryton's purpose in utilizing the court's process was to achieve a conversion. "The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." (Emphasis in original, internal quotation marks omitted.) Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 43,761 A.2d 1268 (2000). "The intent required for a conversion is merely an intent to exercise dominion or control over an item even if one reasonably believed that the item is one's own." Plikus v. Plikus,26 Conn. App. 174, 180 (1991).
The counterclaim does not allege conversion. Rather, in paragraph 5, it is only alleged that "[t]he plaintiff further proceeded to execute on an illegal judgment when said debt had been fully paid by [Kimberly's]."
The court may not adjudicate this matter based on a claim which was not raised in the counterclaim. "A fundamental tenet in our law is that the plaintiffs complaint defines the dimensions of the issues to be litigated. The right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A plaintiff may not allege one cause of action CT Page 8393 and recover upon another. . . ." Treglia v. Zanesky, 67 Conn. App. 447,457-458, 788 A.2d 1263 (2001), cert. denied, 259 Conn. 926, 793 A.2d 252
(2002). A court may not render judgment "on the basis of a legal theory that the plaintiff never asserted in the complaint. . . ." Pergament v.Green, 32 Conn. App. 644, 654, 630 A.2d 615, cert. denied, 228 Conn. 903,634 A.2d 296 (1993).
Obtaining judgment and executing on the bank account after the debt was paid do not show, by themselves, that the process was primarily used for an improper purpose.[2] Ivoryton's conduct may have been mistaken and not wilful. See Niles v. Niles, 9 Conn. App. 240, 254 (1986). The proof before the court does not establish that Ivoryton utilized the legal process "primarily to accomplish a purpose for which it is not designed." (Emphasis in original.) Suffield Development Associates LimitedPartnership v. National Loan Investors, L.P., supra, 260 Conn. 772. In the absence of such proof, the court finds that Kimberly's has not sustained its burden to show that an abuse of process occurred. Accordingly, judgment may enter for Ivoryton on the first count of the counterclaim.
 B. CUTPA
The second count of the counterclaim incorporates the allegations of the first count and adds a paragraph seven, which asserts that Ivoryton's conduct violates CUTPA. No additional facts are alleged. Since Kimberly's has not shown that an abuse of process occurred, and since abuse of process is the only basis asserted on which to premise a finding of liability under CUTPA, it has n6t sustained its burden as to the second count. See Treglia v. Zanesky, supra, 67 Conn. App. 457-458.
 CONCLUSION
In view of the nonsuit entered against Ivoryton, judgment may enter in favor of Kimberly's and against Ivoryton on the complaint. For the foregoing reasons, the court finds against Kimberly's on both counts of the counterclaim. Judgment may enter in favor of Ivoryton and against Kimberly's on the counterclaim. It is so ordered.
 BY THE COURT ___________________ ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT